NATIONAL BANK OF COMMERCE v. J. H. KENNEY ET AL.

No. 1361. Decided December 1, 1904.

**1.—Foreign Law—Evidence—Statement of Facts—Decisions.**

It seems that the appellate courts, in determining the facts as to a foreign law which it was attempted to prove, are governed by the evidence shown by the statement of facts and can not go outside it to consult statutes or decisions though referred to in such statements as showing the law. (P. 298.)

**2.—Foreign Law—Statement of Facts—Presumption.**

When the parties to an appeal in agreeing to the statement of facts have omitted the statutes or decisions of another State of which proof was made to show the law of the place of contract, the presumption would be indulged that the law shown was such as would support the judgment. (Pp. 288, 289.)

**3.—Foreign Law—Pleading.**

Under the rule that allegations are taken most strongly against the pleader, a plea that by the law of a foreign State a note transferred as collateral to secure pre-existing indebtedness was subject to all defenses existing between the parties, will be taken to mean only defenses existing at the time of the transfer. (P. 289.)

**4.—Note—Transfer by Delivery—Pleading.**

The allegations as to the law of Missouri governing the transfer of a promissory note there relating only to an indorsement as collateral security for pre-existing debts, and not to the effect of a transfer without indorsement, a charge that in the latter case it was subject to such defenses as the maker had against the holder was erroneous, under such pleading, unless such was the rule by the law of Texas; and the law here is otherwise, protecting

the assignee as an innocent holder though the transfer was not in writing. Rev. Stats., arts. 304, 307, 308. (Pp. 299, 300.)

**5.—Negotiable Instrument—Time of Payment.**

Where the makers and indorsers of a note, by its terms, waived protest, etc., and agreed "to all extensions and partial payments before or after maturity," such provision was not to be construed as giving the right to extend time of payment to either the maker or the holder alone, and therefore rendering the time uncertain and the note nonnegotiable; the extension meant was one by agreement between debtor and creditor on a good consideration, and the provision was to prevent release of indorsers by such extension; it was a negotiable instrument. (P. 300.)

**6.—Note—Renewal—Payment.**

A note having been transferred by the payees to a bank as collateral security for their indebtedness to it, the makers, on its maturity, executed a renewal note to the original payees, who sold it to another bank. Held: (1) The bank holding the first note was not deprived of its right to recover thereon by the fact that the payees of the second note deposited its proceeds with such bank holding the original, without informing them whence the money came. (2) The makers should be permitted to testify to the circumstances under which the renewal note was executed; but the holders suing on the original note were entitled to an instruction limiting the effect of such evidence to showing that the holders of the renewal note and mortgage obtained it without notice of the outstanding original one. (P. 301.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Hemphill County.

The National Bank of Commerce sued Kenney and others to enforce a note and mortgage and appealed from a judgment for defendants. The judgment being affirmed, the appellant obtained writ of error.

*H. E. Hoover* and *Elijah Robinson,* for plaintiff in error.—The note in controversy, being by its terms payable in Missouri, is, so far as the question of its negotiability is concerned, governed by the law of that State, as announced by its courts of last resort. Brabston v. Gibson, 9 How. (U. S.), 263; Sturdivant v. Memphis Nat. Bank, 60 Fed. Rep., 730; Lowry v. Andreas, 20 Ill. App., 521; Shoe and L. Nat. Bank v. Wood, 142 Mass., 563; Emanuel v. White, 34 Miss., 63; Miller v. Mayfield, 37 Miss., 688; Harrison v. Pike, 48 Miss., 46; The Freeman's Bank v. Ruckman, 16 Gratt. (Va.), 126; Dickinson v. Edwards, 77 N. Y., 573; Harris v. White, 81 N. Y., 532; Curtis v. Delaware, etc., Ry. Co., 74 N. Y., 116; Dunnigan v. Stevens, 122 Ill., 396; Smith v. Elliott, 39 Texas, 203; Johnston v. Gawtry, 83 Mo., 339.

Under the law of Missouri, as announced by its courts of last resort, and according to the decided weight of authority, the note in question is negotiable. City Nat. Bank v. Goodloe, McClelland C. Co., 93 Mo. App., 123; First National Bank v. Skeen, 101 Mo., 683; Stilwell v. Craig, 58 Mo., 24; Jacobs v. Gibson, 77 Mo. App., 244; Fogg v. School Dist., 75 Mo. App., 159; Clark v. Skeen, 61 Kan., 526; Holden v. Clark, 16 Kan., 346; Chicago R. E. Co. v. Merchant's Bank, 136 U. S., 269; Buchanan v. Wren, 10 Texas Civ. App., 560; Stark v. Olsen, 44 Neb., 646; Heard v. Dubuque Bank, 8 Neb., 10; Tradesman Bank v. Green, 57 Md., 603; White v. Smith, 77 Ill., 351; First Nat. Bank v. Bynum, 84 N. C., 24; Hope v. Barker, 20 S. W. Rep., 567; Walker v. Wooleen, 54 Ind., 164; Curtis v. Horn, 58 N. H., 504; Jordon v. Tate, 19 Ohio

St., 586; Conn v. Thornton, 46 Ala., 587; Wood's Byles on Bills and Notes, bottom p. 41; Gaytes v. Hibbard, 5 Biss. (U. S.), 99; Goshen, etc., Road v. Hurtin, 9 Johns. (N. Y.), 217; Duchess Mfg. Co. v. Davis, 14 Johns. (N. Y.), 238; Commercial Bank v. Crenshaw, 103 Ala., 497; Goodloe v. Taylor, 3 Hawk. (N. C.), 458; Palmer v. Hummer, 10 Kan., 464; Gardner v. Parger, 4 Heisk. (Tenn.), 668; Smith v. Ellis, 29 Me., 422; Dobbins v. Oberman, 17 Neb., 163.

Where a party writes his name on the back of a note of which he is neither the payee nor the indorsee, and this is done before delivery, he is a joint maker and not an indorser. Powell v. Thomas, 7 Mo., 440; Lewis v. Harvey, 18 Mo., 74; Schneider v. Schiffman, 20 Mo., 571; Otto v. Bent, 18 Mo., 23; Cahn v. Dutton, 60 Mo., 297; Chaffe v. Memphis, etc., Ry Co., 64 Mo., 193; Semple v. Turner, 65 Mo., 696; Boyer v. Boogher, 11 Mo. App., 130; Cayuga, etc., Bank v. Dunklin, 29 Mo. App., 442; Rossi v. Schawacker, 66 Mo. App., 67.

The fact that the note was transferred by delivery, and without indorsement, does not subject it, in the hands of the plaintiff, to defenses which arose subsequent to the time when plaintiff acquired it. Edwards on Bills and Notes, 287; Daniel on Neg. Inst., sec. 741; Hedges v. Sealy, 9 Barb., 214.

*I. N. Watson, C. H. Kohler,* and *Temple & Hardy,* for defendant in error.—The testimony of the witness relating to the facts and circumstances under which the second note was executed and delivered as a substitute for the first, would be a sufficient defense on the part of the makers and accommodation indorsers of said note, were Ladd, Penny & Swasey, the payee therein, still owner thereof and suing thereon; and therefore was properly admitted to prove a part of appellees' defense. Rische v. Planters Nat. Bank, 84 Texas, 419; Holt v. McCann, 42 S. W. Rep., 310; Hart v. West, 91 Texas, 187.

The transfer of the note sued on by Ladd, Penny & Swasey, to appellant, is governed by the law of the State of Missouri; and the defenses which can be urged to that note are also governed by the law of that State. Trower Bros. Co. v. Hamilton, 77 S. W. Rep., 1081; Fort Dearborn Nat. Bank v. Berrott, 23 Texas Civ. App., 664; Holt v. McCann, 42 S. W. Rep., 310; Kelly v. Telle, 51 S. W. Rep., 633; Russell v. Buck, 14 Vt., 147; Culver v. Benedict, 13 Gray, 11; Allen & Co. v. Bratton, 47 Miss., 119; Yeatman v. Cullen, 5 Blackf. (Ind.), 243; Trimbey v. Vignier, 1 Bingh. New Cases, 151; Jones on Pledges and Collateral Security, 2 ed., sec. 133; Randolph on Com. Paper, sec. 128; Story on Promissory Notes, secs. 165, 171, 172; Story on Conflict of Laws, secs. 272, 278a, 280, 281, 316a, 354, 357; Prentiss v. Savage, 13 Mass., 23; Boyce v. Edwards, 4 Pet., 123; Akers v. Demond, 103 Mass., 318; Williams v. Wade, 1 Met. (Mass.), 82, 83; Foden v. Sharp, 4 Johns. (N. Y.), 183; Rev. Stats., Mo., art. 4488.

The rights of appellant in the note sued on and the defenses that appellees might urge thereto being governed by the law of Missouri,

and the note not being indorsed, appellant acquired it subject to all the equities and defenses against it at the time of or before notice of the transfer. Boeka v. Nuella, 28 Mo., 180; Pattterson v. Cave, 61 Mo., 439; Quigley v. Mexico So. Bank, 80 Mo., 289; Weber v. Orton, 91 Mo., 677; State v. Stebbens, 132 Mo., 332; Bishop v. Chase, 156 Mo., 173; Davis v. Sittig, 65 Texas, 497.

The note sued on by appellant in this case is a nonnegotiable instrument, and under the law, both in Texas and Missouri, it was acquired by appellant subject to the equities in this case. City Nat. Bank v. French, 72 Pac. Rep., 842; Glidden v. Henry, 104 Ind., 278; Woodburry v. Roberts, 59 Iowa, 385; Coffin v. Spencer, 39 Fed. Rep., 262; Second National Bank v. Wheeler, 75 Mich., 546; Lamb v. Story, 45 Mich., 488; Story v. Lamb, 52 Mich., 525; First Nat. Bank v. Carson, 60 Mich., 432; Oyler v. McMurray, 7 Ind. App., 645; Rosenthal v. Rambo, 62 N. E. Rep., 637; Citizen's Bank v. Piollet, 126 Pa. St., 194; Protection Ins. Co. v. Bill, 31 Conn., 534; Merchant's, etc., Bank v. Fraze, 9 Ind. App., 164; Hartley v. Wilkinson, 4 Maule & S., 25; Daniel on Neg. Inst., 4 ed., sec. 41; Story on Bills and Notes, secs 1, 46; Edwards on Bills and Notes, sec. 141; 1 Parsons on Notes and Bills, secs. 35, 37; Brooks v. Hargreaves, 21 Mich., 254.

GAINES, CHIEF JUSTICE.—This suit was brought by the plaintiff in error against J. H. Kenney, P. W. Kenney and J. W. Lambert as makers of a promissory note and to enforce a chattel mortgage upon a stock of cattle, which was executed by J. H. Kenney to secure the note. We speak of P. W. Kenney and J. W. Lambert as makers, though they merely indorsed the note before delivery. As such indorsers they are makers under our law. Latham v. Houston Flour Mills, 68 Texas, 130, and cases cited. The Third National Bank of Springfield, Mass., was also made a party defendant.

The defendants J. H. Kenney, P. W. Kenney and Lambert pleaded their discharge in bankruptcy. The pleadings need not be further stated in this connection. In this connection it need only be said that they were sufficient to present the issues which were developed by the evidence upon the trial of the cause.

Stripped of irrelevant matter, the facts disclosed by the evidence are as follows:

In November, 1899, J. H. Kenney, being indebted to one Moody, who held a mortgage for his debt upon a stock of cattle in Hemphill County, Texas, applied to Ladd, Penny & Swazey, a firm who were doing business in Kansas City, Mo., to pay the debt. This the latter 'agreed to do, he at the same time agreeing in consideration of their assumption to execute to them a note for the amount, together with a mortgage on the same cattle to secure its payment; all of which was accordingly done. It was upon this note and mortgage that this suit was brought. Ladd, Penny & Swazey paid the Moody debt; though it is probable that this was not immediately done. The note was transferred by delivery—but

without indorsement—by the payees to the plaintiff in order to secure an indebtedness then due by them to it. The time of this transfer is a matter about which the testimony is conflicting.

On the 8th day of February, 1900, the makers of the first note, at the request of Ladd, Penny & Swazey, executed a second note in renewal of the first. The two notes were for the same amount, in the same form and in the same words, except that the first was dated November 29, 1899, and the other February 8, 1900, and that the second was payable at the Interstate National Bank, whereas the place of payment of the first was the American National Bank. The effect was to extend the time of payment a little more than two months. This note was secured by J. H. Kenney's mortgage on the same cattle. It passed into the hands of the defendant bank in due course of trade, and without notice of the previous note.

As to the time of the delivery of the first note to the plaintiff one Patton testified, in effect, that he attended to this business as the representative of the plaintiff, and that it was his impression that the note was placed as collateral with the plaintiff bank about the time of the maturity of a large note due from Ladd, Penny & Swazey to the plaintiff, which it was intended in part to secure. The note to be secured fell due December 11, 1889. He also testified that on February 7th he made a list of the collaterals held for the security of that debt and that the note was among the number. On the other hand defendant P. W. Kenney testified that he came to Kansas City on February 8th, and was requested by Ladd, Penny & Swazey to have executed a new note in lieu of the old, together with a like mortgage to secure it and to take the papers back to Texas for the signatures of his comakers and for the execution of the new mortgage, and to return them to Kansas City. Upon their receipt Ladd, Penny & Swazey were to return the first note. He also testified that when he was in their office, he saw the old note in their possession. The new note was written in Ladd, Penny & Swazey's office, was carried by P. W. Kenney to Texas and there executed, as also the mortgage as agreed upon, and the papers were immediately forwarded to the payees at Kansas City. The first note was not returned.

The note sued on was made payable at the American National Bank, Kansas City; but it does not show upon its face whether Kansas City, Mo., or Kansas City, Kan., was meant. However, it was admitted in open court upon the trial that there is a bank of that name in Kansas City, Mo., and it does not appear that there was a bank of the same name in Kansas City, Kan. Therefore we think it must be assumed that the note was to be paid in the State of Missouri, and that the contract is to be construed according to the laws of that State. In the presentation of the case in this court it was argued upon both sides upon that assumption.

It is well settled that in the courts of this State, in the absence of pleading and proof to the contrary, the laws of another State are presumed to be the same as the laws of Texas.

As to the law of Missouri, the defendants, the Kenneys and Lambert, pleaded that "by the law of the State of Missouri where said note is payable, and where said Ladd, Penny & Swazey and plaintiff bank were then and there engaged in business and where said plaintiff bank acquired possession and control of said note and mortgage, all transfers of notes and mortgages as collateral security for a pre-existing indebtedness leave such collateral notes in the hands of the transferee subject to all defenses existing between the parties to such collateral note, and that all the rights, if any, which plaintiff had to said note and mortgage sued upon were acquired under the laws of Missouri, and plaintiff's rights, if any, were and are governed by said laws of Missouri aforesaid, and that plaintiff took said note subject to the rights and defenses of these defendants against said firm of Ladd, Penny & Swazey." In the pleadings of the defendant bank so much of the answer of their codefendants as has been quoted was adopted.

The testimony adduced upon the trial in support of this averment is very meagerly given in the statement of facts. Ex-Judge Robinson, who was one of the attorneys for plaintiff, and a practicing lawyer in Kansas City, Mo., was called by the defendants and testified, in effect, that he only knew the law of commercial paper in the State of Missouri in a general way; that "the courts were always changing" and that "he was not certain about anything;" that "the common law is in force in the State of Missouri as modified by the statute." He also identified a book handed him by counsel as a Missouri report, but what report it was and what it contained the statement of facts does not inform us.

Mr. Kohler, one of the defendant's attorneys, also testified that he was familiar with the laws of Missouri on the subject of negotiable paper and presented the statutory provisions upon the subject, which were introduced in evidence. It is also stated in the statement of facts that "the defendant introduced in evidence article 4488, Revised Statutes of Missouri, 1899, and pages 29, 30 and 31, Missouri Supreme Court Report No. 137."

Though not necessary to a decision of the case as here presented, we take occasion to say that we are of opinion that we are not at liberty to go outside of the statement of facts and to consult the references there found in order to ascertain the contents of the statute or of the opinion of the Supreme Court of Missouri, to which such references are there made. Suppose that in a statement of facts there should be a reference to the pages of a certain volume of the county records as containing a copy of a deed and that its contents should not be given, would we be authorized to examine the book in order to ascertain the nature and effect of the deed? We think not. However, we think that in this case we should apply the rule, which was followed in Lee v. Kingsbury, 13 Texas, 68. There it appeared, that a judgment and execution were introduced in evidence, but by express agreement of counsel they were omitted from the statement of facts. The court held that under the circumstances it was to be presumed that their contents were such as

would support the judgment.  So here counsel for both parties have
agreed to the statement of facts and it has been approved by the trial
judge; and the contents of the statute and of the opinion of the Supreme
Court of Missouri have been omitted; and therefore, as we think, we
should hold that the statute and opinion were such as would support the
ruling of the court.  However a difficulty arises under the pleadings of
the defendant as to the Missouri law.  The answers, as we have seen,
allege that "all transfers of notes and mortgages as collateral security
for a pre-existing indebtedness, leave such collateral notes in the hands
of the transferee subject to all defenses existing between the parties
to such collateral note."  This may mean defenses existing at the time of
the transfer or defenses existing at the time of the trial.  The former
would seem to be the more natural construction.  At all events, the con-
struction is doubtful, and such being the case, the doubt must be resolved
against the pleader.  We conclude, that since as we think the answers
should be construed as alleging only that under the law of Missouri the
note was subject to defenses existing at the time of the transfer, even if
it had been shown that that law went further and made the note subject
to subsequent defenses also it could not benefit the defendants.  They
must be confined to the pleadings.

After instructing the jury, in effect, that the holder of a promissory
note, which had been transferred as collateral, has the right to collect
the note, so long as the debt intended to be secured remains unpaid,
the court in its charge proceeded as follows: "If such a note so put
up as collateral is not indorsed by the original drawee at the time of
its delivery to the person or corporation holding the debt against the
original drawee, then in such case the drawer of the note and his in-
dorsers have the right to plead and receive the benefit of all the equities
and defenses in their favor against the note which existed or arose at
any time, and they may plead such defenses and equities against the
holder in the same manner and receiving the same benefits under them,
as if they were contesting the note in the hands of the drawee."  Error
is assigned upon this charge and we think the assignment should be
sustained.

The charge is not in accordance with the law of Missouri as pleaded.
The pleading alleged, as we have seen, the law of Missouri as to notes
transferred as collateral to secure a pre-existing indebtedness; and did
not allege the law of that State as to notes transferred as collateral with-
out indorsement.  Therefore the instruction is erroneous, unless the
proposition be correct under the laws of Texas.  The law of Missouri
as to promissory notes transferred without indorsement having been
pleaded upon neither side, it is presumed that it is the same as the law
of Texas.  Under our law it matters not how a negotiable note has been
assigned.  Though the transfer be not evidenced by a writing it is placed
upon the same footing as a transfer by indorsement.  Word v. Ellwood,
90 Texas, 130.  If transferred without notice of any defenses as against
the transferer it is subject to none.  It follows, as we think, that the in-

struction complained of is erroneous; and that it is fatal to the judgment and should result in its reversal—provided the note sued upon be negotiable by the law merchant. It is only negotiable notes, to which the article of our Revised Statutes construed in Word v. Ellwood, above cited, applies. See arts. 304, 307, 308, Rev. Stats.

The question therefore presents itself, is the note in question a negotiable promissory note? The Court of Civil Appeals held that it was not. In this ruling, however, we do not concur. The ground upon which it is claimed that the note is nonnegotiable is that the time of its payment is uncertain. This claim is predicated upon the following provision in the note. "The makers and indorsers hereof hereby severally waive protest, demand and notice of protest, and nonpayment in case this note is not paid at maturity, and agree to all extensions and partial payments before or after maturity without prejudice to holder." If as is argued the effect of the stipulation is to give the right to the maker without the consent of the holder, or to the holder without the consent of the maker, to appoint another day of payment and thereby extend the time, it may be, that it would render the instrument not negotiable. But we do not think it capable of that construction. It does not say that either the holder or the maker may extend the note. It merely makes a provision in case the time of payment may be extended. How extended? It seems to us the extension meant is that which takes place when the debtor and creditor make an agreement upon a valuable consideration for the payment of the debt on some day subsequent to that previously stipulated. The obvious purpose of the provision taken as a whole was merely to relieve the holder of the paper from the burdens made necessary by the rigid requirements of the mercantile law in order to secure the continued liability of the indorsers and sureties upon the paper. Therefore what was meant by the stipulation as to the extension of time was simply that in case the holder and the maker should agree upon an extension, the sureties and indorsers should not be discharged. The holder and maker of any note may at any time agree upon an extension; therefore the fact that they may have that right does not affect the negotiability of the paper. It is usually said that in order to make an instrument negotiable under the law merchant, the time of payment must be certain. But a note payable "on or before" a certain date is negotiable. The maker of such a note has the right to pay before the day named, but the holder can not demand payment before that day. So in that case, the time at which the maker may elect to pay is uncertain, but the time at which the holder may demand payment is certain. It follows that if the holder has the absolute right to demand payment at a certain day, the note is negotiable. This is but an illustration of what we understand to be the general rule. There being nothing in the stipulation under consideration which gave anyone the right to demand of the holder of the note an extension of the time of payment, we think the time at which he could demand payment was fixed and that therefore it was a negotiable note.

From what has been said it would seem that in order to defeat this suit the defendant bank must show that the law of Missouri as to commercial paper is different from the law of Texas. In order to do so, it must ·plead the law of that State and prove it as pleaded. Therefore what the precise issues may be upon another trial we can not foresee. In addition to this the plea in reconvention of J. W. Lambert goes out of the case. There was a verdict and judgment against him on his cross-action and he has not appealed. For these reasons we do not deem it necessary to pass upon all the other assignments of error. The questions presented by many of them may not arise upon another trial. We will notice some of them briefly.

We think that the assignment that "the court erred in permitting the defendant's witness, J. L. Stratton, to testify that a check for the proceeds of the sale of the second note to the Third National Bank of Springfield was placed in the National Bank of Commerce," should have been sustained. The fact that Ladd, Penny & Swazey deposited the money arising from the second note with the plaintiff without letting them know whence it came, or that it was to be applied to the note in suit, was no defense to the action.

On the other hand, we do not think it was error to permit the Kenneys to testify as to the circumstances which led them to execute the second note.

During the course of the trial the plaintiff's counsel asked the court to give a special instruction, which in part is as follows: "The plaintiff asks the court to charge the jury that certain evidence has been admitted as to the statements made by Kenney and others to the defendant, the Third National Bank of Springfield, as to the conditions under which they executed the second note and mortgage, and as to the agreement and understanding between the Kenneys and Ladd, Penney & Swazey, you are charged that this evidence was only admitted for the purpose of showing that the Third National Bank of Springfield obtained its note and mortgage without any notice of the note and mortgage held by the Bank of Commerce, and you are also instructed to consider said testimony for no other purpose." We think so much of the charge as has been quoted should have been given. We incline, however to the opinion that the part of the request not quoted would have been misleading.

The Kenneys pleaded a discharge in ·bankruptcy and it was admitted in open court that they were discharged. Therefore the judgment can not be disturbed as to them. Lambert also pleaded a discharge in bankruptcy, but if the statement of facts shows any proof or admission of such discharge, we have failed to find it.

Therefore the judgment will be affirmed as to the Kenneys on their plea of discharge in bankruptcy; but as to the defendants in error Lambert and the Third National Bank of Springfield, it will be reversed and the cause will be remanded.

*Reversed and remanded.*