**BRINKER v. FIRST NAT. BANK OF CLEVELAND, OKL.**

No. 1168—5481.

Commission of Appeals of Texas, Section B.

April 1, 1931.

Holland & Moore and George K. Holland, all of Dallas, for plaintiff in error.

Robertson, Robertson & Payne, of Dallas, for defendant in error.

RYAN, J.

On February 21, 1927, defendant in error brought suit in the district court of Dallas county against Clyde Turley and P. M. Brinker, for recovery on the following promissory note:

"$1,890.00

"Cleveland, Oklahoma, March 1st, 1923.

"Six months ———— days, without grace, after date, for value received, we as principals, promise to pay to the order of

"The First National Bank, of Cleveland, Oklahoma, Eighteen Hundred Ninety and no/100 Dollars, at the First National Bank, of Cleveland, Oklahoma, and interest thereon at the rate of ten per cent per annum, from Maturity until paid, and in case of legal proceedings to collect this note, or in case it is placed in the hands of an attorney for collection, agree to pay an additional sum of ten per cent. on the amount of the note as attorney's fees. The sureties, endorsers and guarantors of this note severally waive extension of time of payment, presentment and

138

demand for ·payment, protest and notice of protest for non-payment of this note.

"Clyde Turley
"Vick Wear
"P. M. Brinker

"Due September 1st, 1923."
Indorsed:
Sept. 10th, 1923 paid $15.00
Sept. 26th, 1923 credit 10.00
Oct. 16th, 1923 credit 15.00
Interest paid to 12—1—1923.

It was averred in the petition that "Vick Wear is not made a party for the reason that he is dead and his estate is insolvent."

The defendant Turley did not defend. The defendant Brinker pleaded as defenses:

(1) That he, at the bank's request became only an accommodation indorser, received no consideration therefor, and, if the note sued on purports to have been made by him as a principal obligor, this was because of a mutual mistake between him and the bank.

(2) That, after the maturity of said note, the bank accepted the note of said Turley, individually, as of date December 1, 1923, and other notes in renewal thereof, also so signed by Turley, and which Brinker refused to sign, in payment of the note sued on, and the bank recognized the obligation as being only that of Turley; also that said Brinker did not consent or agree to any renewal or extension of the date of payment of the note sued on, and never, at any time, received any consideration whatsoever on account of any such renewal or extension, and, if any waiver or agreement as to extension of payment date is contained in said note of March 1, 1923, the same is invalid, unenforceable, and not binding on him, because no consideration therefor ever was received by him.

The proof shows that Brinker and Wear had a mercantile business at Cleveland, Okl., and Brinker in the spring of 1920 negotiated a sale of his interest to Turley for $2,500. Turley did not have the money, and he applied to the bank for a loan, which, according to Turley's testimony, the bank agreed to make upon a note signed by Turley and Wear. The president of the bank asked Brinker also to sign the note, which he finally did, and the proceeds were credited to Turley, and by him paid to Brinker in consummation of the trade. This note was executed in 1920, and was due six months after date. There were several renewals brought about in the following manner: A renewal note was delivered to Turley, who in turn secured the signatures of Wear and Brinker, delivered the renewal note to the bank, and took up the old note.

Mr. Brinker testified that he executed the note of March 1, 1923, the one in suit, at the request of Mr. Turley. When it became due, Brinker refused to renew it, but the bank

accepted a renewal signed by Turley and Wear alone. There were several subsequent renewals by Turley alone, as to each of which the preceding note was surrendered when the renewal note was delivered, but the bank always retained possession of the March 1, 1923, note.

When the original note to the bank was executed in 1920 by Turley, Wear, and Brinker, the bank gave Turley a checking account, and Turley wrote and gave Brinker a check for the latter's interest in the business' of Brinker and Wear.

The district court's judgment was upon a directed verdict in favor of the bank for the full amount of the note, against Turley and Brinker; this judgment was affirmed by the Court of Civil Appeals, on Brinker's appeal. 16 S.W.(2d) 965.

The bank has retained and never surrendered possession of the note sued on herein; it has not been paid by the makers, and is a valid outstanding obligation against Brinker as one of such makers, unless he has been released as a matter of law because the bank accepted new notes from Turley alone in extension and renewals thereof, without Brinker's consent.

This brings us to the question whether Brinker was primarily or secondarily liable— if the latter, then such extensions by the bank, without his consent, had the effect to release him, and the plea of discharge urged by him should have been sustained by the trial court, unless such defense was abrogated by the Uniform Negotiable Instruments Act (title 98, Rev. Stat. 1925 [article 5932 et seq.]).

In several of the states the doctrine is announced that, under the Uniform Negotiable Instruments Act, one who signs as principal maker of a promissory note, although in fact a surety and known to the payee to be such, is not discharged by the granting of an extension of time for payment to the principal debtor without his consent, upon the theory that the act designates five different ways (which are exclusive) whereby such discharge can be effected, not one of which embraces an extension of the time of payment, although it is expressly provided that those secondarily liable may be discharged by any agreement binding on the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument unless made with the assent of the person secondarily liable, or unless the right of recourse against such party is expressly reserved. Union Trust Co. v. McGinty, 212 Mass. 205, 98 N. E. 679, Ann. Cas. 1913C, 525, and annotations thereunder, page 528.

In Iowa, however, says the annotator, it has been held that, where the issue is between the parties to the instrument, as between the payee and an accomodation joint maker,

the Negotiable Instruments Act does not apply, the payee in such a case not being regarded as a holder in due course, and therefore an extension of time by the payee to the principal debtor without the consent of an accommodation joint maker will release the latter. Fullerton Lumber Co. v. Snouffer, 139 Iowa, 176, 117 N. W. 50.

■ The view of the Iowa Supreme Court, as above stated, is expressly approved by our Supreme Court, in J. I. Case Threshing Machine Co. v. Howth, 116 Tex. 434, 293 S. W. 800, 801, and must therefore be accepted in this state as the rule governing in cases like this.

This subject is so thoroughly discussed by Associate Justice Looney of the Court of Civil Appeals in the same case, reported in 280 S. W. 238, 240, and in the approving opinion by Associate Justice Greenwood of the Supreme Court, above referred to, we can add nothing thereto.

■■ The conclusions reached in that case are applicable to the facts in this case, viz. (a) the original payee is not a holder in due course, and the note is therefore subject to every defense to which it would be subject as if it were nonnegotiable; (b) a complete defense to the suit of a nonnegotiable note in behalf of an accommodation maker would be established by his pleading and proving that the holder of the note had made a binding agreement with the principal obligor to extend the note for a definite time, with knowledge of the status of the accommodation maker and without his consent.

Said Justice Looney: "The defendant in error is an original party to the instrument sued upon, and therefore is not a holder in due course, within the meaning of the Negotiable Instruments Act. This being true, under the unambiguous provision of the statute just quoted, the defendant in error can occupy no better position than the holder of a nonegotiable instrument; it follows, therefore, that the discharge pleaded by plaintiff in error was available as a defense just as it existed at common law prior to the enactment of the Negotiable Instruments Act."

Judge Greenwood used the following language: "A complete defense to the suit of a holder of a nonnegotiable note in behalf of an accommodation maker would be established by his pleading and proving that the holder of the note had made a binding agreement with the principal obligor to extend the note for a definite time, with knowledge of the status of the accommodation maker and without his consent. Burke v. Cruger, 8 Tex. 66, 58 Am. Dec. 102; Ryan v. Morton, 65 Tex. 260; Wylie v. Hightower, 74 Tex. 306, 11 S. W. 1118; Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128; Lonergan v. San Antonio Trust Co., 101 Tex.

77, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803; Brandt on Suretyship and Guaranty (2d Ed.) §§ 342, 375.

"The principle underlying all the cases on this subject is that one cannot be bound by a contract to which he has not given his assent. Consent to become surety for another's promise to pay at one time is not consent to be surety for such other's promise to pay at an altogether different time. The Negotiable Instruments Act recognizes the essence of the engagement of the maker of a negotiable instrument to be 'that he will pay it according to its tenor,' and not according to quite different terms. Section 60 of art. 5936."

Under the above rule, governing in this state, the bank is not a holder in due course under the protection of section 29, art. 5933, Rev. Stat. 1925, and the pleaded defenses were available to Brinker.

■ The proceeds of the note were credited by the bank to Turley, and, while it is true Turley paid over, by his own check, such proceeds to Brinker, the consideration for such payment to Brinker was the sale by Brinker to Turley of the former's interest in the mercantile business of Brinker and Wear, and not the signing of the note by Brinker. It may be true that, without Brinker's signature to the note, the bank would not have made the loan, but the fact remains that the direct loan was made to Turley, and not to Brinker.

■ An extension of time, as in this case, by which the bank secured the benefit of an interest-bearing obligation for a definite period, and Turley secured the benefit of a forbearance for the same period, is based upon a sufficient consideration to uphold the agreement of extension. 6 Tex. Jur. p. 827.

■■ The extension between the principal obligor and the holder postpones the right of action and the commencement of the running of limitation until expiration of the period for which the extension is granted. Dalton v. Rainey, 75 Tex. 516, 13 S. W. 34; 8 C. J. 441.

■ In general, the giving and taking of the new paper simply operates as an extension of the time of payment of the original indebtedness. 6 Tex. Jur. p. 810; 8 C. J. 441; 7 Cyc. 891.

■ While an extension of time of payment between the creditor and principal debtor without a surety's consent operates as a release as to the surety (Red River Nat. Bank v. Bray, 105 Tex. 315, 148 S. W. 290; Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128), this right may be waived by such surety, either in advance or afterwards (Darby v. Bank [Tex. Civ. App.] 253 S. W. 341;

National Bank of Commerce v. Kenney, 98 Tex. 293, 83 S. W. 368; Jackson v. Bank [Tex. Civ. App.] 185 S. W. 893; Commonwealth Nat. Bank v. Goldstein [Tex. Civ. App.] 261 S. W. 538; Sharpe v. Bank [Tex. Civ. App.] 272 S. W. 321; 8 C. J. § 681; 7 Cyc. 922); such waiver enters into the contract of every person who signs, whether as drawer, maker, acceptor, or indorser (Williams v. Rosenbaum [Tex. Civ. App.] 79 S. W. 594; Leeds v. Hamilton [Tex. Civ. App.] 35 S. W. 77; Daniels Neg. Inst., § 1092), and permits of more than one extension of the time of payment without the consent of and without-discharging the surety from liability (State Nat. Bank v. Vickery [Tex. Com. App.] 206 S. W. 841; Archenhold v. Smith [Tex. Civ. App.] 218 S. W. 808). Such a waiver does not increase the original liability of the surety; it merely renders unnecessary the performance of the acts waived in order to fix liability. State Nat. Bank v. Vickery, supra.

Therefore, because of such waiver, the various extensions did not release the parties secondarily ,liable so long as the waiver clause was in effect, and Turley was authorized to agree with the bank for payment of the debt on some day subsequent to that previously stipulated (National Bank of Commerce v. Kenney, 98 Tex. 300, 83 S. W. 368) and thus bind Wear and Brinker by such agreement of extension (evidenced in this case by new notes signed by him alone), whether known to them or not, and to that extent he represented and acted for them— the relationship of agency was created, but, when that relationship ceased, as it did, at Wear's death, Turley's right to further bind them likewise ceased, and any extensions thereafter made by him were not authorized by the waiver, and, if made without the consent of Brinker and Wear's proper representatives, operated their release. Rev. Stat. 1925, art. 5939, § 120, par. 6.

The proof shows that Wear died in 1923 or 1924, after execution of the note sued on, which was signed by Turley, Wear, and Brinker, and became due on September 1, 1923. In September, 1923, Turley and Wear signed and delivered to the bank an extension note, which Brinker refused to sign. This was followed by the extension note dated December 1, 1923, for $1,850, due February 1, 1924, and the extension note dated September 11, 1924, for $1,850, due January 1, 1925, and the last extension note which was for $1,886 dated July 1, 1925, due October 1, 1925, all signed by Turley alone. Each such renewal note, when superseded by another, was surrendered to Turley by the bank, except the last note of July 1, 1925, which the bank retained.

It was agreed by the parties "that so far as concerns the notes given by Clyde Turley, individually, to the plaintiff bank, said notes being of date subsequent to March 1, 1923, the defendant Brinker did not consent to the extensions of the time of payment of the note of March 1, 1923, and he received no consideration of any sort from the bank or any one else for the extended time of payment thereof unless such consent for extension of time or such consideration was involved in or grew out of the original transaction or the note sued on."

The agreements of extension made by Turley, without the assent of Brinker, secondarily liable (all authority in Turley by force of the waiver having terminated at Wear's death), made after Wear's death, therefore released Brinker.

The relationship of agency is created, in its broadest sense, when one person acts for or represents another by the latter's authority (2 Tex. Jur. 384; 2 C. J. 419), and is implied from the conduct of the parties and the circumstances of the particular case (Holmes v. Tyner [Tex. Civ. App.] 179 S. W. 887).

When Wear and Brinker, by the waiver clause, placed it within the power of Turley, to continue to bind them by his acts of extension, and he did so, he acted as their representative and agent for that purpose. Wear and Brinker were joint principals in thus giving Turley such authority, and, when Wear died, Turley's authority thereunder immediately ended. Cleveland v. Williams, 29 Tex. 204, 94 Am. Dec. 274; Primm v. Stewart, 7 Tex. 178; Renfro v. Waco (Tex. Civ. App.) 33 S. W. 766; Long v. Thayer, 150 U. S. 520, 14 S. Ct. 189, 37 L. Ed. 1167; Hanrick v. Patrick, 119 U. S. 156, 7 S. Ct. 147, 30 L. Ed. 396; 2 C. J. 546; 21 R. C. L. 888.

We have reached the conclusion that Brinker was released by reason of the extensions without his consent, made by the bank after Wear's death, and therefore recommend that as to said Brinker the judgments of the trial court and Court of Civil Appeals be reversed and judgment be here rendered in his favor; as against Turley, such judgments should be affirmed.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both in part reversed and rendered, and in part affirmed, as recommended by the Commission of Appeals.