POLK COUNTY NAT. BANK OF BARTOW v. SHELTON.

No. 7034.

Circuit Court of Appeals, Fifth Circuit.

Feb. 27, 1934.

W. F. Himes, John R. Himes, and C. Edmund Worth, all of Tampa, Fla., for appellant.

R. W. Withers, of Tampa, Fla., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was at law against appellant as indorser; the declaration in sixteen counts, each on a separate promissory note. It alleged the separate corporate character and existence of the two Polk County National Banks "of Bartow," and "in Bartow." The declaration alleged as to each note that it was negotiable, that it was made and delivered to defendant, that thereafter, for value received, the defendant had indorsed, negotiated, and delivered it to the Polk County National Bank in Bartow of which plaintiff is receiver. It pleaded the provision in each note waiving presentment, demand for payment, and notice of nonpayment and the consent of the maker, surety, guarantor, and indorser, that "the note or any part of it might be extended without further notice." It alleged that it was overdue and unpaid. A copy of each note was attached to the declaration. The defendant demurred to the declaration, that the notes were not negotiable because by reason of the consent clause they were not payable on demand, or at a fixed or determinable future time. It insisted that it did not appear that defendant had received any consideration for their making or had made any agreement which would make it liable on them, or that the plaintiff had used due diligence to collect them from the makers.

The District Judge overruled the demurrer. He thought the notes were negotiable, and that defendant's liability on them had been sufficiently alleged. We agree with this ruling. While there is some authority supporting appellant's position that the provision in the note consenting to an extension defeats negotiability, the great weight of authority is to the contrary. Some of the leading cases are National Bank v. Kenney, 98 Tex. 293, 83 S. W. 368; First Nat. Bank v. Buttery, 17 N. D. 326, 116 N. W. 341, 16 L. R. A. (N. S.) 878, 17 Ann. Cas. 52. In a note to Townsend v. Adams, 77 A. L. R. 1085 et seq., the authorities are collected. After the overruling of its demurrer the defendant filed pleas going generally to each count of the declaration. Of these pleas the first asserted (1) that the note referred to in each count was a part of the notes receivable of the defendant, pledged by the bank of Bartow, herein called "old bank" to the bank in Bartow, herein called "new bank," by virtue of the terms of a demand note for $1,576,520.36 [1] executed and delivered to the new bank on April 16, 1929. That the collateral notes sued on by plaintiff were held by it only as pledgee.

The second plea was the same as the first, with the additional allegation that the property pledged to the demand note was all the remaining assets and property of the defendant. The third plea set up in detail the organization of the new bank, and the agreement that in consideration of the transfer to the new bank of all of its assets the new bank would assume and relieve defendant of all of its liabilities, except those to its shareholders on account of capital, surplus, or undivided profits. That in the performance of this agreement the demand note set up in the other pleas was executed and contemporaneously with its execution all assets of the old bank, including the notes sued on were delivered to the new bank, and the new bank holds them under that agreement. A fourth plea, that the defendant did not indorse the notes sued on in those pleas, was leveled at the seventh and tenth counts, and after issue joined, plaintiff dismissed them from the suit.

Plaintiff's demurrers to these pleas were all sustained. Repleading in eleven pleas, defendant put forward, in some of them with more particularity than it did in the three

---

[1] This note recites the deposit as collateral security of deeds to realty, bonds, stocks, and each and every note or receivable in the hands of the old bank, with authority to sell or pledge the same or any substituted collateral, and that the proceeds are to be applied to the payment of the note. The concluding sentence of this note is: "It being understood and agreed that the above note is to be liquidated out of the securities pledged and listed herein, and without recourse to the liability of shareholders as such."

354

overruled, that holding the notes only as pledgee the receiver of the new bank could not sue on them as owner, and could not in the face of the assumption by the new bank of all the liabilities of the old one, hold the old bank on its liability as indorser. In addition, there are three pleas traversing generally, as to the fourth and fifth counts, the ninth and sixteenth, and the first, third, sixth, eighth, and fourteenth, that these notes were not negotiated and delivered to the new bank by the defendant.

In further elaboration of its point that plaintiff may not recover on the notes, the pleas go into detail as to the circumstances under which the indorsement sued on was placed on the notes and the bank obtained delivery of them. The first, second, fifth, sixth, seventh, ninth, and tenth pleas, directed to the notes in the first, third, fourth, fifth, sixth, eighth, ninth, fourteenth, and sixteenth counts, show that these notes had been indorsed and delivered as collateral to loans the old bank had made some time before the April 16th agreement was made, and that the new bank acquired these notes by paying off the old bank's liabilities it had assumed, and taking these notes up through the pledgees as it had been agreed it would do. The eleventh count alleges that the notes sued on in the second, fourth, fifth, eleventh, twelfth, thirteenth, and fifteenth counts[2] had been some time before the 16th of April indorsed to pledgees to secure the bank's debts, but had been gotten back by the bank and were in its hands when the assumption agreement was made. As to these notes, it pleads that when they were delivered to the new bank by the old bank after and in pursuance of the assumption agreement, the indorsement of the old bank's name, previously made, was still on them. That this was the result of mutual oversight and inadvertence, they having been delivered to the new bank pursuant to the April 16 assumption agreement. Plaintiff demurred to each of these pleas and in addition filed a motion to strike plea No. 11.

The District Judge thought that the three short pleas were not sufficient as traverses, to put in issue the receiver's ownership of and right to sue on the notes. He thought, too, that the other pleas merely presented in more elaborate form, the defenses set up in the three pleas first filed to which he had already sustained demurrers. He sustained all of plaintiff's demurrers and the motion to strike.

Appellant is here urging in support of its pleas all the points it made as defendant below, appellee combating them. We turn now to their consideration greatly aided by the elaborateness and excellence of the briefs of counsel. These points are: (1) That it appears from the collateral note, to which the notes sued on were attached, that they were held only in pledge, and that therefore no title was transferred to, nor can a suit be maintained on them, as owner, by the receiver. (2) That by reason of the agreement the two banks made for the transfer of assets by the old bank and the assumption by the new bank of all the old bank's liabilities, plaintiff may not recover. (3) That its short pleas were sufficient as traverses.

■ We think appellant wrong in its first position; right in its second and third. The California cases which it cites, Sparks v. Caldwell, 157 Cal. 401, 108 P. 276, and Stradley v. Tout, 65 Cal. App. 530, 224 P. 469, as holding that as between pledgor and pledgee the general property in a pledge remains in the pledgor notwithstanding a transfer of apparent title to the legal pledgee, are controlled by a statute. The general rule is contrary. Appellee conceives of appellant's second point as based on what appellee calls the minority rule, the right to explain and qualify by parol an unrestricted indorsement. It insists that though there are decisions permitting this to be done, the weight of authority is opposed. It argues further, as conclusive against appellant's right to do this, that the rule in Florida is settled otherwise, Anderson v. Ax, 104 Fla. 294, 139 So. 798; Valentine v. Hayes, 102 Fla. 157, 135 So. 538, and that by this construction of its negotiable instrument statute the federal courts are bound.

■ We agree with appellee that speaking of its general application, and having no regard to the many exceptions to it, the weight of authority favors the rule that the contract of indorsement is a written contract which cannot be varied by parol, and particularly do we agree that this is the rule in Florida, and in the courts of the United States. Martin v. Cole, 104 U. S. 30, 26 L. Ed. 647; Hawkins v. Shields, 100 Miss. 739, 57 So. 4, 4 A. L. R. 763; Note 17 L. R. A. (N. S.) 839, 840; Walmer v. First Acceptance Co., 192 Wis. 300, 212 N. W. 638, 51 A. L. R. 605. But we do not regard defend-

[2] Contradiction between this plea and the ninth and tenth is noted. They allege that the notes sued on in the fourth and fifth counts had been pledged to Murdough and delivered by him to the new bank. The eleventh plea alleges that these notes had been taken back from the pledgees and delivered by the old bank to the new.

ant's pleas as having, or as intending to have, the effect at all of varying or contradicting by prior or contemporaneous agreement, the indorsement contract. Its pleas set up a subsequent and independent agreement, made long after the indorsement made in another pledging had been placed on the paper, that the new bank, on consideration of getting the old bank's assets, assumed to discharge, and hold the old bank harmless from all of its liabilities. This agreement in no manner contradicts or varies the indorsement; it accepts it as written. It operates to place the new bank in the position of principal, the old bank, of surety to the pledgees of the notes. It prevents the new bank from holding the old bank liable on an indorsement, the liability for which the new bank had assumed. In the circumstances of this case the consideration which ordinarily makes so strongly against parol restriction of an indorsement that it is unreasonable to contend, in the face of the case with which such a restriction could have been placed upon the note, that the indorsement contract was not the whole agreement of the parties, South Florida Lbr. Mills v. Breuchaud (C. C. A.) 51 F.(2d) 490, has no application. Defendant is not endeavoring to restrict the indorsement. It is merely showing that as between it and the new bank, it has been relieved of its obligation by the new bank's assumption.

■ As emphasizing its position that the agreement it sets up in defense is subsequent to and independent of the agreement the indorsement carries, defendant points to the fact that the notes sued on in counts 1, 3, 4, 5, 6, 8, 9, 14, and 16 had been indorsed, negotiated, and delivered in pledge to others before the April 16 assumption contract was made, and that the defendant neither indorsed, delivered, nor negotiated them to the bank thereafter. It insists that it is not sound to say that though the assumption contract was made after the indorsements were written on the notes, the real contract on which the receiver sues is the contract made subsequently by delivering and permitting the delivery of the notes with the contract of indorsement thereon, for such delivery was not the making of a new contract, but merely the carrying out of the one already made. It argues further that if as to the notes made the subject of the eleventh plea the assumption agreement must be treated as not subsequent, but prior to the contract of indorsement, because that must be construed as taking effect as of the date of the delivery of those notes to the new bank, this certainly may not be said of those notes which, already

pledged to others, the new bank obtained from the pledgees by paying off the notes they were collateral to. All that defendant sought to do by its pleas was to show that by a subsequent agreement to take its assets and assume its liabilities, the new bank as between it and the old bank discharged the indorsements. To permit it to do this violates no rule of law; it but gives effect to fundamental equities. It is but an application of the principle that when the equities of the relation forbid the enforcement of the contract, this relation may be shown by parol. Holmes v. Goldsmith, 147 U. S. 150, 13 S. Ct. 288, 37 L. Ed. 118; McFarland v. Shaw (Tex. Com. App.) 45 S.W.(2d) 193; Newkirk v. Hays, 220 Mo. App. 514, 275 S. W. 964; Wakonda State Bank v. Fairfield, 53 S. D. 268, 220 N. W. 515; Jones on Collateral Security, § 518; 3 Jones on Evidence, §§ 495–497.

■ The additional equities of the eleventh plea, that the failure to erase or restrict the indorsement when the notes referred to in it were delivered was due to mutual oversight and inadvertence, strengthen defendant's position by putting forward grounds which, whether sufficient for reformation, do add to its general equities. Defendant maintains its position that its formal short pleas are effective traverses under section 4321, Florida Compiled General Laws, by insisting that the statute authorizes a defendant to "select and traverse separately any material allegation in the declaration" and by citing as authority, that the mere indorsement of the note is not a negotiation, it must be accompanied by delivery. Williams v. Peninsular Gro. Co., 73 Fla. 937, 75 So. 517. Appellee vigorously attacks the pleas as defective because stating mere conclusions of law and because the allegations do not completely deny any material issue. It argues that what the statute permits a traverse of is an allegation which is decisive of the whole case. It cites in support of its position, Johnson v. Florida East Coast Ry., 66 Fla. 415, 63 So. 713, 50 L. R. A. (N. S.) 561, Ann. Cas. 1916C, 1210; Hancock v. State Bank, 70 Fla. 243, 70 So. 211; Little v. Bradley, 43 Fla. 402, 31 So. 342.

On matters of Florida pleading the writer does not claim to speak with authority. Quinn v. Smith Co. (C. C. A.) 57 F.(2d) 784. It seems to him, however, that the pleas traversed material and determinative allegations in denying that the notes were delivered and negotiated, and that the demurrers to the pleas should have been overruled. It may not be inappropriate, however, for even

as poor a pleader as he is to suggest that upon another trial, without any sacrifice of precision, the luxuriant profusion of these pleas may be pruned, and the case brought more simply to issue.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

