**FIRST NAT. BANK OF FORT WORTH v.
BROWN et al.**

No. 14526.

Court of Civil Appeals of Texas.
Fort Worth.

May 14, 1943.

Rehearing Denied June 11, 1943.

Culbertson, Morgan, Christopher & Bailey, of Fort Worth, for appellant.

Joe F. Orr, of Fort Worth, for appellees.

SPEER, Justice.

The First National Bank of Fort Worth, to which we shall refer as Bank, executor of the will of Miss Stella Sands, deceased, instituted this suit against A. J. Brown, J. H. Ferrell, H. F. Spelman and Edgar T. Hart, on a note for $2,000, alleging joint and several liability; and for a foreclosure of a chattel mortgage lien on described oil well drilling equipment as against defendant Brown.

Defendants Ferrell, Spelman and Hart defended upon allegations of general denial and specially that, (1) they signed the note only as sureties for their co-defendant Brown, and that the payee (Miss Sands) knew and understood that they were such sureties only; (2) payee took a chattel mortgage lien from Brown, on certain well drilling machinery of much greater value than the obligation signed by them, and that after maturity of the note, failed and refused to foreclose said chattel mortgage lien, although requested by the named defendants to do so, thereby allowing the security to become dissipated and lost to the detriment of defendants; (3) upon such requests for foreclosure payee declined, saying she did not want to embarrass defendant Brown and that she believed he would pay the note; and (4) at the time of the acceptance by payee of the note, without the knowledge or consent of either of said sureties, payee entered into a written agreement with defendant Brown, whereby the proceeds of the note were required to be used for a specific purpose, and by which agreement none of the money would go to either of the three sureties; that the written agreement altered, limited and changed

the purpose and effect of the note signed by the sureties, and for the reasons so pleaded in the special defenses set out, they were released from liability on the note. There was the additional plea that. in any event, if they should be held on the note, they should have judgment over against Brown for any amount that should be awarded against them. Defendant Brown did not answer.

Trial was had to the court without a jury. Judgment by default was entered in favor of the Bank (executor) against Brown for the amount of the note, interest and attorneys' fees, with a foreclosure of the chattel mortgage lien, but was denied recovery against the defendants, Ferrell, Spelman and Hart. The Bank has appealed.

At request of the Bank, court filed findings of fact and conclusions of law. The material part of such findings and conclusions are substantially as follows: All defendants signed a note for $2,000, due in sixty days, payable to Stella Sands; only Brown got the proceeds of the note, and that neither of the other defendants received any benefit therefrom, but were accommodation signers, which facts were at all times known to the payee. At the time the money was turned over to Brown he and payee entered into a written agreement by which the use of the money was limited to payment of certain lease rentals and the moving of drilling equipment to a location in Montague County within a limited time; that Ferrell, Spelman and Hart held some interest in oil and gas leases in the vicinity of the location to which Brown was required to move the equipment and begin drilling a well. That after the note fell due defendants Ferrell, Spelman and Hart asked payee why she did not foreclose the mortgage lien on the drilling equipment and advised her that she was liable to lose her. debt if she did not do so, to which she replied that she did not want to embarrass Brown, that he was a good oil man and she believed he would pay her, but that none of said inquiries or requests for foreclosure were in writing, as required by Article 6244, R.C.S. That after said conversations, the drilling equipment was moved, and relying upon said conversations, Ferrell, Spelman and Hart did not pursue or keep up with said property, and have no knowledge of what became of same, and that payee never made any demand on said defendants for payment of the note. That the written agreement made between payee and Brown, without the knowledge of either of the other signers, precluded said other signers, Ferrell, Spelman and Hart, from having any voice in the manner of the use of the money obtained by Brown on the note. That by her active opposition and refusal to foreclose said chattel mortgage lien, she was guilty of an affirmative act of negligence and that she failed to exercise ordinary care or reasonable diligence in the preservation of the security, which security was worth much more than the amount of the debt, and that if the security had been pursued with reasonable diligence by payee, the debt could have been paid therefrom; that the written agreement between payee and Brown materially altered the purpose and effect of said note and obligation, as related to Ferrell, Spelman and Hart.

The court concluded as a matter of law that under the facts so found, Ferrell, Spelman and Hart were released from liability on the note and are entitled to judgment in their favor.

By its first four points, the Bank asserts error of the court in holding that Ferrell, Spelman and Hart (to whom we shall refer as defendants, since Brown did not appeal) were accommodation makers of the note, so as to release them from liability, and that they were not liable as principals; that, alternatively, there was error in not holding them as sureties.

The note signed by the makers recites on its face: "All signers and endorsers of this note are to be regarded as principals, so far as their liability to payee is concerned, and each of us * * * waives presentation hereof for payment * * * and I, we and each of us * * * consent that the payee or other owner of this note may at any time * * * extend the date of maturity hereof without consulting the other signers * * *."

■ ■ Notwithstanding the stipulation in the note that all are principals, since the note had not been negotiated but remained in the estate of the payee, these defendants were privileged to allege and prove, if they could, that they were in fact sureties and not principals, with full knowledge of the facts with the payee. McFarland v. Shaw, Tex.Com.App., 45 S.W.2d 193; Marshall National Bank v. Smith, 33 Tex.Civ.App. 555, 77 S.W. 237, writ refused. There are some decisions by our Courts of Civil Ap-

peals which use language that could be construed to announce a different rule, yet we think the greater weight of authority supports the one here announced.

In First Nat'l Bank v. Skidmore, Tex. Civ.App., 30 S.W. 564, the note under consideration provided that the makers promised, "jointly and severally", to pay, yet under pleading and proof that payee knew some of the signers executed the note to accommodate another signer, those so signing were held to be sureties for their comaker.

In Brinker v. First Nat'l Bank of Cleveland, Tex.Com.App., 37 S.W.2d 136, the note stipulated that the signers promised to pay as "principals" and the court held, under the allegations and proof, that certain signers were sureties only, and that an extension of maturity date to the principal released the "sureties" from liability. In the two cited cases, those found to be sureties are referred to as "accommodation sureties".

In our Uniform Negotiable Instrument Act, Section 29, Art. 5933, R.C.S., we find special reference made to "accommodation parties" as applicable to such instruments; they are said to be such persons who have signed instruments as makers, drawers, acceptors or indorsers without receiving value therefor, and for the purpose of lending their names to some other person. The only one of the defendants who testified in this case concerning the matter, said Miss Sands, the payee, did not ask him to sign the note but that he signed it at the request of A. J. Brown. In a broad sense, it may be said that any one who signs a note or obligation, when he does not receive any monetary consideration therefor, is to "accommodate" some other person. If it be to accommodate one of the cosigners, he would nevertheless be a surety on the instrument and liable for its payment to the payee. The fact that one who signs a note received no part of the consideration does not of itself constitute him an "accommodation party", as contemplated by the negotiable instrument act. The meaning of the words "accommodation party", as used in the Act, has a special and technical meaning, and is not there used in its broadest popular sense. It is only in those cases where the note is executed for the sole purpose of negotiation by the payee, and thereby to procure credit, that the signing will be deemed an accommo-

dation note for the payee. Brinker v. First National Bank of Cleveland, Tex.Civ. App., 16 S.W.2d 965 (reversed upon other grounds, Tex.Com.App., 37 S.W.2d 136); National Bank of Commerce of Houston v. Rogers, Tex.Civ.App., 125 S.W.2d 632, writ dismissed; Paden v. American State Bank & Trust Co., Tex.Civ.App., 103 S.W.2d 243.

Felker v. Thomas, Tex.Civ.App., 83 S.W.2d 1055, discusses the effect of the language used in Section 29, Art. 5933, supra. There it is held that the expression in the Act referring to the signer having received no value for the signing, means, without value for the instrument and not for the accommodation. It is clear to us that the defendants here loaned their credit to Brown, one of their co-signers, and that the accommodation was to him and not to the payee. This is true even though the payee may have also benefited by their signing; it would be difficult to imagine a case of suretyship that did not result in a benefit to the payee. It is unimportant, as we view this case, whether defendants received any benefit or value for having signed the note. The court did find as a fact that they had interests in oil and gas leases in the vicinity of the place where Brown was expected to drill an oil well. The defendant who testified in the case said he and another defendant had leases in the vicinity and he was interested in seeing this well (the one to be drilled by Brown) or some other well drilled, but that was not the reason he signed the note.

The court found as a fact that these defendants were accommodation signers of the note. We may not assume that by such finding the court meant to hold that defendants were not liable on the note because of the provisions of Section 29 of Art. 5933. Defendants did not so plead their defense; they do not contend here that they were entitled to immunity on that finding, but only upon the ground that they were sureties, and because of the acts of payee, they were released from liability. In their briefs, defendants say they have never contended that the note sued on is accommodation paper, and that question is not in the case. They insist that the fact finding by the court is equivalent to a finding of suretyship on their part. We think this a proper construction to place upon the court's findings. Our courts seem occasionally to refer to sureties as "accommodation sureties" and "accommodation signers", while discussing their rights and

liability as sureties. See Howth v. J. I. Case Threshing Machine Co., 116 Tex. 434, 293 S.W. 800, and Brinker v. First National Bank of Cleveland, Tex.Com.App., 37 S.W.2d 136.

The testimony upon which the court must have based his finding that Miss Sands knew of the relation between Brown and the other signers, was rather meager, but we are unable to say it was without probative value. It consisted of proof that the next day after the note was executed she entered into a written agreement with Brown as to what use should be made of the money, and upon another occasion, when some of the defendants asked her why she did not sue and foreclose a chattel mortgage lien against Brown, she said she did not wish to embarrass Brown, that he was a good oil man and she believed he would pay her.

Under the facts found by the court, we think defendants were sureties on the note and not principals.

Points 5 to 8 assert error in the conclusion of law announced by the court, to the effect that because of the facts found by him, the Bank (executor) should not recover against the three defendants. This involves the pertinent inquiries: (1) Did Miss Sands, the payee, by "negligently" failing and refusing to foreclose the chattel mortgage lien, upon the oral requests of defendants, release the sureties on the note? And (2) Did she, by entering into the written agreement with Brown, on July 8, 1936, so alter the original obligation signed by Brown and the defendants as to release the latter? We think both questions should be answered in the negative.

■ When the payee of a note has taken a chattel mortgage lien from one of the makers of a note to secure the obligation, it is the settled rule in this state that such lien holder must use ordinary care to preserve the lien and property, for the reason all signers have an interest therein; but this duty is ordinarily not one of action, nor is he liable for loss resulting from mere passivity. If he fails to exercise ordinary care (under the rule announced) resulting in waste or loss of the security, the surety will be discharged. 39 Tex. Jur., p. 959, § 52. The dissipation or loss of security that is held to secure payment or performance, which results from inaction or passive negligence of the creditor or obligee, does not discharge the surety.

39 Tex.Jur., p. 963, § 55; Stetson v. First National Bank, Tex.Civ.App., 44 S.W.2d 792, writ refused; Ramsey v. Wahl, Tex.Com.App., 235 S.W. 838.

■ The most that can be said of the fact findings by the court, supplemented by the statement of facts, is that upon the oral request, or rather the inquiry, of two of the defendants, they asked her why she did not sue on the note and foreclose the mortgage lien, advising her that she was liable to lose her debt if she did not; that she declined, saying, in effect, that she did not want to embarrass Brown, that he was a good oil man and she believed he would pay her. The defendants relied upon this conversation and thereafter made no effort to keep up with the mortgaged property and did not know where it was at the time of the trial. This does not mean that the property has been wasted, dissipated or vanished out of existence and cannot be located. There is no finding or evidence that the security is gone. Miss Sands' inaction was only passive and cannot be said to be "active" negligence resulting in the loss of the security.

■ In the circumstances of this case, an oral request for the payee to sue is not sufficient to require action on her part. Neyland v. Lanier, Tex.Civ.App., 273 S.W. 1022, writ dismissed. Moreover, under the provisions of Article 6244 R.C.S., before the sureties could be relieved of liability under Article 6245, such a notice or request must have been in writing.

■ Relative to the agreement between the payee in the note and the principal maker, Brown, the defendants here pleaded that it constituted a material alteration of the obligation made between them and Miss Sands, the payee. The court found as a fact, and it may be inferred that he concluded as a matter of law, that such agreement was made without the knowledge of the three complaining defendants and that its effect was to materially alter their obligation and thus release them.

The note sued on bears date of July 7, 1936. The agreement between Miss Sands and Brown bears date of July 8, 1936. The chattel mortgage lien securing the debt is dated July 7, 1936, and was acknowledged by Brown on July 22, 1936.

The agreement complained of as altering the note obligation, omitting the attached acknowledgment, is as follows:

"State of Texas ⎱ Know all Men by "County of Tarrant⎰ These Presents:

"That We, Miss Stella Sands of Fort Worth, Tarrant County, Texas, and A. J. Brown, of Fort Worth, Tarrant County, Texas, entered into this agreement in connection to Two Thousand Dollars ($2,000.-00) advanced by Miss Stella Sands of this date to A. J. Brown, as set out in Chattel Mortgage delivered by said A. J. Brown of this date to Miss Stella Sands. Said $2000.00 is to be used, $900.00 for payment of rentals on leases in the block upon which extensions could not be made, leaving a balance of $1100.00 to be used in moving in machinery on the location, setting up same, moving in fuel oil and other necessary things to be done, in order that drilling work may proceed in as systematic manner as is possible. Actual moving in machinery to proceed not later than July 22, 1936, and actual drilling of the well to proceed immediately after machinery is moved in and set up.

"Witness Our Hands, this the 8th day of July, 1936, at Fort Worth, Texas.

"Stella Sands,
"A. J. Brown."

It requires no authorities in support of the assertion that when the note was executed, with Brown as principal and the other signers as sureties, Brown was entitled to receive the funds promised, to be used by him as he saw fit and proper; but under the undisputed facts in this case, we think the agreement above quoted did not alter this privilege and option by Brown. Miss Southall, the notary public before whom the instrument was executed, testified, in effect, that she was the secretary of defendant Hart, at whose office the note was payable; that Brown frequently came into that office and had a folder filed there; that he brought the instrument into the office, written in longhand, and she copied it; that it was then signed by Brown and Miss Sands. There is nothing to indicate that Miss Sands had made any request of Brown as to what use he would put the funds, nor that Brown was doing anything more than exercising his option to use the funds in the manner set out in the agreement so signed, and that the payee was assenting to such option by Brown.

We see nothing in the instrument to bring it within the provisions of section 125 of Article 5939, which is designed to relieve makers of liability because of subsequent alterations of their obligations. The section referred to enumerates five elements deemed as alterations, neither of which is before us, and concludes: "Or which (alteration) adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."

No complaint is made of the default judgment entered against A. J. Brown and that part of the judgment will not be disturbed.

We hold that the trial court erroneously applied the law pertaining to the defendants J. H. Ferrell, H. F. Spelman and Edgar T. Hart in entering judgment that the Bank take nothing as against them.

 The three named defendants, although sureties, were obligated to pay the note if the principal Brown did not do so. It is true that the three sureties prayed for judgment over against Brown for any amount that should be awarded against them, but since Brown filed no answer and a default judgment was taken against him by the Bank, and the other defendants not having process issued and served on Brown on their cross-action, they were in no position to have a judgment against him as prayed for, nor can one be so rendered by us. They have, in law, waived such a right. 39 Tex.Jur., p. 987, § 75.

The case appears to have been fully developed and no useful purpose would be served by remanding the case for another trial, and it becomes our duty to render such judgment as the trial court should have entered.

Under authority of Neyland v. Lanier, Tex.Civ.App., 273 S.W. 1022, writ dismissed, the judgment of the trial court, insofar as it entered judgment against A. J. Brown, will be left undisturbed, and in all other respects the judgment will be reversed and rendered for First National Bank of Fort Worth, Texas, executor, against J. H. Ferrell, H. F. Spelman and Edgar T. Hart, for the principal amount of the note of $2,000, with interest and attorney's fees as therein provided, and for costs of suit. It is so ordered.