MILLER et al. v. MURPHY.  (No. 8006.)

(Court of Civil Appeals of Texas. Dallas. Nov. 30, 1918.)

EVIDENCE ⬯444(6)—CONTINGENT CONTRACTS —PAROL EVIDENCE—BILLS AND NOTES.

Where promissory note was delivered in payment of stock in an involved corporation with agreement that it should become binding upon the corporation's creditors accepting a compromise settlement, which was not done, the note was not enforceable, and the fact that it was contingent could be shown by parol.

Error from Hunt County Court; A. J. Gates, Judge.

Suit by J. N. Miller and another against O. A. Murphy. Judgment for defendant, and plaintiffs bring error. Affirmed.

A. H. Mount, of Dallas, for plaintiffs in error.

B. F. Crosby and Morris B. Harrell, both of Greenville, and W. B. Hamilton, of Dallas, for defendant in error.

RAINEY, C. J.  Suit in county court of Hunt county brought by plaintiffs in error to recover of defendant in error on a promissory note for $900, said note being as follows:

"$500.00.       Greenville, Tex., June 15, 1911.

"One year after date, I promise to pay to J. N. Miller and J. D. Miller, or order, the sum of five hundred dollars, for value received, with interest thereon from date at the rate of 10 per cent. per annum, payable at Greenville, Texas, together with 10 per cent. attorney's fees on the principal and interest if placed in the hands of an attorney for collection or sued upon.              [Signed] O. A. Murphy."

Defendant in error answered by plea of failure of consideration, alleging:

"That the note sued on had been given by defendant to plaintiffs for five shares of capital stock in the Murphy-Miller Mercantile Company, a corporation, and alleged further that said corporation was insolvent and the stock worthless at the time of the execution and delivery of said note. The defendant further pleaded a contemporaneous parol agreement to the effect that if the corporation should afterwards prove to be insolvent that plaintiffs would cancel said note and never demand payment thereof; that the corporation did thereafter prove to be insolvent, and therefore the note sued upon never became a legal and binding obligation upon defendant."

Plaintiffs excepted to that portion of defendant's answer pleading a contemporaneous parol agreement, which exceptions were overruled. A trial resulted in a judgment for defendant in error, and plaintiffs in error appealed.

Plaintiffs in error assign as error the court's action in overruling exceptions to said answer and for admitting testimony as to contemporaneous parol agreement varying and contradicting the note.

O. A. Murphy testified:

"At the time the note sued upon was executed, there was a condition in regard to the delivery of the note. It was not delivered as a binding obligation, but the understanding I had with the plaintiff J. N. Miller was that the note

should not become binding unless the Murphy-Miller Mercantile Company could make a settlement with its creditors and continue in business. J. N. Miller is my brother-in-law. He and his brother, J. D. Miller, owned $500 of the capital stock of the Murphy-Miller Mercantile Company, a corporation. The corporation had become involved and was heavily in debt, and the debts were maturing, and it did not have the money to pay its debts and was in a bad financial condition. I had discussed the affairs of the company with J. N. and J. D. Miller all along, and they knew its condition, and J. N. Miller came to Greenville and discussed the matter with me and stated that he did not want his name or the name of his brother, J. D. Miller, connected with a failure. They are, and were then, in the banking business at Royse City, and he said they did not want their names connected with the business if it should fail. * * * And he agreed if I would make a note payable to J. N. and J. D. Miller for $500 that the note should not become a binding obligation unless I succeeded in settling with the creditors, which at that time I thought I could do, and it was agreed that I would make the note with the understanding if I could settle with the creditors and keep the business going and make a success of it that the note was to be good and I would pay it, but if the business failed, as it looked like it might, and I could not settle with the creditors, the note was to be destroyed and it would not be held against me.

"Upon this agreement I signed the note and attempted to settle with the creditors of the company, and we called a meeting of the creditors at the Oriental Hotel at Dallas, and my attorney, Mr. Hamilton, and myself met the creditors and tried to make a settlement but were unable to do so. The bank at Royse City in which the plaintiffs are stockholders, directors, and officers, was one of the creditors of the Murphy-Miller Mercantile Company, and I continued to discuss all the affairs of the Murphy-Miller Mercantile Company with the plaintiffs and kept them posted as to the negotiations with the creditors. They were notified of the meeting of the creditors at Dallas, and they told me to go ahead and do what I could with the other creditors, and whatever I did would be all right with them. They did not attend the creditors' meeting, but I acted on what they said, and, when the creditors declined all of our offers and we were unable to make any agreement with them so as to continue the business, we made an agreement with the creditors at that meeting that if all the creditors of the Murphy-Miller Mercantile Company would agree to accept their pro rata part of the proceeds of the sale of the company's property, in full settlement of their indebtedness, we would turn over all the property of the company to a trustee, to be selected by the creditors, without any legal proceedings. I had indorsed and become personally liable on bonds and notes of the corporation for a large portion of its indebtedness, and the creditors to whom I had become personally responsible were also represented at this meeting, and it was also agreed, as part of the same agreement, that I should turn over and convey to the trustee, so selected, all of my individual nonexempt property, and that it should be sold and the proceeds prorated among the creditors to whom I had become personally responsible, and the creditors elected Mr. W. M. McBride of Greenville, Tex., as trustee; and, in pursuance with the agreement, I conveyed all of my nonexempt property, including about 800 acres of land, to him, and all the corporation property was conveyed to him.

"After the trustee was elected, and before the conveyances were made, I told the plaintiffs what we had done, and they said it was all right. The bank of which the plaintiffs were officers was one of the creditors whose papers I had signed personally. If the creditors had not made this agreement, I would have taken the matter into bankruptcy, because I wanted a complete discharge from all my debts when I turned over all my property, and, if I had known that the plaintiffs were going to demand the payment on this note, I would not have made the agreement or turned over all my property, but would have taken the matter through the bankrupt court and procured a discharge. The plaintiffs never demanded the payment on this note, and I never had any intimation that they were going to fail to comply with their agreement, or that they claimed that it was a binding note, until some time in 1915, when I got a letter from J. D. Miller. I promptly answered the letter. I wrote the answer on the back of the letter and then copied it off and sent it to him. I have the original letter with my answer on the back of it before me. (Defendant here offered in evidence the answer on the back of the letter, but plaintiffs objected because it was not the best evidence and no notice had been served to produce the original, and the court sustained the objection.) The settlement with the creditors was made in the fall of 1911. All of the corporation property was taken and all of my nonexempt property was taken and did not pay the indebtedness in full, and I did not get anything back out of it."

Defendant in error presents the following counter proposition, to wit:

"In a suit upon a promissory note by the original payee where the defendant pleads that the note was not delivered as a binding obligation or as a present contract, it is not error for the court to overrule exceptions to such defensive plea, and where the proof sustains the allegation it is not error for the court to submit the issue to the jury; and where the jury finds that the allegation is true and that the note was never delivered as a present contract, but that its delivery depended upon a contingency which never transpired, a judgment of the court based thereon should not be disturbed."

We concur in the proposition of defendant in error as just stated. When a promissory note or written contract is delivered to become binding depending on a contingency, it is not enforceable until the contingency happens and such facts can be shown by parol to defeat the action.

The rule governing under such conditions is stated by Corpus Juris and other authorities:

"The delivery may be a conditional one to take effect only on the happening of a future contingency, and the agreement in regard thereto need not be in writing. Such a delivery may constitute an escrow, although there is considerable conflict in the decisions as to whether a note complete on its face and intended to take effect eventually as a note can be an escrow when deposited directly with the payee or his agent instead of a third person. But this is now settled, in states where the Negotiable Instruments Law is in force, by the provision that 'the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument,' as between immediate parties or one not a holder in due course." Corpus Juris, vol. 8, pp. 205, 206; Meeks v. Holmes, 154 S. W. 365; Nelson v. Boggs, 177 S. W. 1005; Bank v. McAnulty, 31 S. W. 1091; Burke v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698; Farrar v. Holt, 178 S. W. 618; Rahe v. Yett, 164 S. W. 30; Loving v. Dixon, 56 Tex. 75.

The defendant in error having testified to said contingency and being believed by the jury, we conclude that the evidence supports the verdict, and the judgment is affirmed.