E. R. WILLAMS V. M. T. JONES.

No. 5897.  Decided July 19, 1932.
(52 S. W., 2d Series, 256.)

*Vickers & Campbell,* of Lubbock, for appellant.

A joint and several obligor on a note for a debt admittedly due and owing, and who executes a renewal or extension note, is not exempt, released or discharged from liability on such renewal or extended note because the other joint obligor did not sign with him. Tinkham v. Wright, 163 S. W., 615; Clem v. Chapman, 262 S. W., 168; Randals v. Pecos Valley State Bank, 192 S. W., 363.

The promise of plaintiff to secure the signature of P. A. Jones to the note sued upon did not exempt, release or discharge the defendant from liability,—it being admitted that the defendant was due and owing the amount of the indebtedness evidenced by the note, and that P. A. Jones was notoriously insolvent at the time of such promise, and ever since. Darby v. Farmers State Bank, 253 S. W., 343.

*Berry, Warlick & Gossett,* of Vernon, for appellee.

The note upon which the appellee is sued was never a valid note or contract, for the reason that said note was signed by the defendant, M. T. Jones, upon the condition that "and to become effective" when appellant Williams, the payee, in such purported note, secured the signature of P. A. Jones thereto; since the signature was never secured to such note and no effort was made by appellant Williams to so secure the execution of said note by P. A. Jones, the contingency upon which said note was to become binding upon defendant wholly failed, and said note never became effective and is void *ab initio.* King v. Wise, 282 S. W., 570; Carlton v. Cowart, 45 S. W., 749; Loving v. Dixon, 56 Texas, 75.

No new and valid consideration being shown, appellant can not recover on the note in suit against the appellee because such

note represents the renewal of a prior note from which the principal obligor was released by the payee without the consent of the appellee as surety. Burk v. Cruger & Moore, 8 Texas, 68; Zapalac v. Zapp, 54 S. W., 938; King v. Parks, 63 S. W., 900.

MR. JUDGE RYAN delivered the opinion for the Commission of Appeals, Section B.

The following is an epitome of the facts in this case from the statement by the Honorable Court of Civil Appeals for the Seventh Judicial District, in certifying the questions hereinafter set forth, viz:

On February 25, 1920, P. A. Jones and M. T. Jones (brothers) executed their promissory note in the sum of $6,000.00, payable to the order of J. W. Rose, on January 1, 1921, with interest from maturity at the rate of ten per cent and ten per cent attorney's fees, if collected by suit, and containing the recital:

"The makers, signers and endorsers of this note severally waive demand, notice and protest and agree to all extensions and partial payments before or after maturity and we agree that after maturity the time of payment may be extended from time to time by any one or more of us without the knowledge or consent of any of the others of us and after such extension the liability of all parties shall remain as if no such extension had been made," which will hereafter be referred to as the "waiver clause."

This note (designated in the record as Note No. 1) was credited with various amounts.

On January 1, 1922, P. A. Jones and M. T. Jones executed a renewal note for $2,750.00 (being the balance then due on Note No. 1) payable to the order of J. W. Rose on or before November 1, 1922, with interest at the rate of ten per cent per annum from date, and the usual stipulation for ten per cent attorney's fees.

This note designated in the record as Note No. 2 does not contain the above described "waiver clause" in Note No. 1.

Before maturity, appellant E. R. Williams became the owner and holder in due course, without notice and for a valuable consideration, of said Note No. 2. Across the face of this note is the notation: "renewed January 1, 1923."

On January 29, 1926, M. T. Jones and P. A. Jones executed their note for $2,786.12 payable to the order of appellant E. R. Williams on or before January 1, 1927, with ten per cent interest per annum from date and the usual stipulation for ten per cent attorney's fees.

This note is designated in the record as Note No. 3 and does not contain the above described "waiver clause" in Note No. 1.

On January 28, 1928, M. T. Jones alone executed his note for $2,940.00 payable twelve months after date to the order of E. R. Williams with ten per cent interest per annum from date and the usual stipulation for ten per cent attorney's fees, in renewal of Note No. 3 and is designated in the record as Note No. 4. It does not contain the above described "waiver clause" in Note No. 1.

On January 28, 1929, M. T. Jones alone executed what is designated in the record as Note No. 5, which, omitting date and signature, is as follows:

"Twelve Months after date we, I, or either of us, promise to pay to the order of E. R. Williams the sum of Three Thousand Two hundred Thirty Four and 30/100 DOLLARS for value received, at the rate of 10 per cent per annum from Date until paid, the interest payable annually, and ten per cent Attorney's fees if sued upon or placed in the hands of an Attorney for collection. Payable to The Bank of Chillicothe, Chillicothe, Texas."

On April 18, 1930, appellant, Williams, filed suit in the District Court of Hardeman County against M. T. Jones to recover upon said Note No. 5.

Trial before the court without a jury resulted in a judgment that appellant Williams take nothing and that Jones recover his costs.

The trial court filed findings of fact which include, among others, these, viz:

That on or about January 29, 1926, when the said P. A. Jones and M. T. Jones renewed said indebtedness by what will be called Note No. 3, the said E. R. Williams was informed by M. T. Jones of the capacity in which the said M. T. Jones had executed said note, that he was surety and P. A. Jones was the principal on said notes.

Before January 28, 1928, plaintiff E. R. Williams desired a further renewal of said indebtedness, and for that purpose he tendered to P. A. Jones a renewal note, which the said P. A. Jones refused to execute, telling plaintiff that he was insolvent, and that if the plaintiff was going to file suit on the indebtedness he had as well do so then as he the said P. A. Jones did not intend to sign any more renewals thereof; that afterwards plaintiff presented said note which is designated as No. 4 to the defendant M. T. Jones for his signature, and the said M. T. Jones was told that he, plaintiff, would send the same to P. A. Jones for his signature. And then the said M. T. Jones executed

said note No. 4 in the sum of $2,940.30 with the understanding and agreement that plaintiff would have the said P. A. Jones execute the same as the principal in said indebtedness.

Plaintiff did not procure the signature of said P. A. Jones to said note No. 4, nor even attempted to do so and the said P. A. Jones had, before said note was executed by M. T. Jones, declined to further renew said indebtedness, all of which plaintiff well knew at the time he presented the same to M. T. Jones for execution.

On the————day of————plaintiff desired a further renewal of said indebtedness, and he presented the note in suit, which is called No. 5, to said M. T. Jones for his signature, explaining to defendant that he would procure the signature of P. A. Jones thereto, and the said defendant M. T. Jones again explained to plaintiff that he was only the surety on said note and not the principal and that he did not expect to pay the indebtedness; the plaintiff told him that he, plaintiff, did not intend to bring suit against defendant at any time on said indebtedness, but that he only wanted to keep it up in a business shape.

When defendant executed said Note No. 5, he did not know, and did not learn until some time afterwards that P. A. Jones had not signed note No. 4, said note No. 4 having been delivered to defendant some time after he executed note No. 5, being note sued upon, and that plaintiff promised and agreed with defendant that he would procure the signature of P. A. Jones on said note No. 5.

Plaintiff did not procure the signature of P. A. Jones to note No. 5, and that he made no effort to do so; plaintiff then knew that the said P. A. Jones would not sign any further renewals of said indebtedness, having been so informed when note No. 4 was presented to him by plaintiff, and concluded as a matter of law: that by failing to procure the signature of P. A. Jones to note No. 4, plaintiff released the defendant M. T. Jones therefrom, and that he not having procured the signature of P. A. Jones to note No. 5, the note in suit, said note is void and of no force or effect as to the defendant M. T. Jones, and that plaintiff cannot recover thereon.

Appellant excepted to the judgment of the Court and attacks the findings because the Court failed to find that P. A. and M. T. Jones were both insolvent at the time he purchased the note and up to the time of the trial.

With reference to the issue of insolvency, the appellee Jones alleged:

"At the time he (plaintiff) purchased said note No. 2 and said other notes, knew that P. A. Jones and this defendant M. T. Jones, had lost their fortunes and was insolvent."

By trial amendment plaintiff alleged:

"That P. A. Jones is notoriously insolvent and was at the time mentioned and since plaintiff acquired the note from J. W. Rose. However, plaintiff says he did not know that P. A. Jones was insolvent when he purchased the note from J. W. Rose in July, 1924."

The testimony of both the appellee and his brother P. A. Jones sustain the allegations of insolvency.

The defendant plead that P. A. Jones was the principal debtor and he was only surety and accommodation maker on notes one and two; that at the time he signed note No. 3, he told plaintiff he was only a surety and an accommodation party and had received none of the consideration for which notes Nos. 1 and 2 had been made; that in order to induce defendant to sign Note No. 4, plaintiff promised to get P. A. Jones to sign it also, which plaintiff failed to do and that defendant's signature thereto was obtained through fraud, undue influence and false representations; that the same representations were made by plaintiff in order to induce defendant to sign note No. 5, and that when he signed note No. 5 he did not know that P. A. Jones had not signed note No. 4; that he would not have signed either note No. 4 or No. 5 if he had known and understood that plaintiff did not intend to procure the signature of P. A. Jones to each of said notes.

The appellant insists that appellee was neither a surety nor an accommodation maker; that because he appears as a joint maker on Note No. 2, which the Trial Judge found appellant had acquired for a valuable consideration, before maturity, without notice of any infirmities therein, appellee is liable as a joint maker thereon; that because appellee neither plead nor proved the payment of any consideration to plaintiff for the alleged agreement on the part of plaintiff to procure the signatures of P. A. Jones to either Note No. 4 or Note No. 5, and because plaintiff had the right to sue either of the joint makers of Notes 2 and 3, the Court erred in discharging appellee upon the ground that plaintiff had violated the condition upon which appellee had signed Notes 4 and 5.

The prayer for recovery is confined to Note No. 5, and the petition upon which the suit is based declares only upon it. There is no prayer in the alternative for recovery upon the antecedent notes, which the testimony shows were surrendered

as they were respectively substituted or renewed by new notes.

The questions certified are as follows, viz:

(1)   Aside from the promise of appellant Williams to get P. A. Jones to sign the renewal notes after appellee signed them, was appellee primarily or secondarily liable thereon?

(2)   If appellee was primarily liable, then, under the findings hereinbefore set out, did any legal duty rest upon Williams to secure the signature of P. A. Jones who was shown to be insolvent?

(3)   Is the stipulation relating to the renewals as set out on the first page of this certificate and incorporated in Note No. One, to be considered as a part of subsequent renewal notes, although not written therein?

(4)   Does the promise of Williams to M. T. Jones, a co-maker of the original note, that he would get P. A. Jones, the other insolvent maker, to sign renewal Notes Nos. Four and Five, and his failure to do so, release M. T. Jones, the appellee?

(5)   Was there any consideration moving to Williams for his promise to secure the signature of P. A. Jones upon renewal Notes Nos. Four and Five?

OPINION.

This suit was filed for recovery upon Note No. 5 alone, with no reference whatsoever to its antecedents; there are no parties to said note except the payee, Williams and the maker, M. T. Jones; the trial court found that the maker, M. T. Jones, was only a surety for P. A. Jones, principal in the indebtedness, and when M. T. Jones signed said note it was because of the promise and agreement of Williams, the creditor, that he (Williams) would procure the signature of P. A. Jones thereto, which was never done. In other words, the signing and delivery of said Note No. 5 by M. T. Jones to Williams was conditional upon P. A. Jones also signing the same, and further conditional upon Williams procuring P. A. Jones to so sign.

■ The delivery was not absolute and unconditional. If a note be delivered on condition that something is to be done before the obligation thereof attaches, then the delivery is conditional and until such condition is performed no obligation attaches between the original parties thereto.

Section 16 of the Negotiable Instruments Act (Art. 5932, Rev. Stat., 1925) provides that between immediate parties, the delivery of the instrument may be shown to have been conditional and it is only when the instrument is in the hands of a

holder in due course that a valid delivery by all prior parties is conclusively presumed.

■ Williams, being an original party to Note No. 5 (the instrument sued on) is not a holded in due course (Brinker v. First National Bank (Com. App.), 37 S. W. (2d) 136; J. I. Case Machine Co. v. Howth, 116 Texas, 434), and therefore such note is subject to the same defenses as if it were non-negotiable (Neg. Inst. Act, Art. 5935, Sec. 58; Brinker v. First National Bank, *supra;* J. I. Case Machine Co. v. Howth, *supra*), and is discharged by any act which will discharge a simple contract for the payment of money. Art. 5939, Sub. 4, Rev. Stat., 1925.

The condition precedent to M. T. Jones' liability on Note No. 5 was that P. A. Jones' signature should be obtained by Williams and this not having been performed, the obligation of said note is not enforcible. Miller v. Murphy, 206 S. W., 968; Rector v. Evans (Com. App.), 6 S. W. (2d) 105; 6 Tex. Jur., 648; 6 Tex. Jur., 650, sec. 52; 6 Tex. Jur., 952, Sec. 277; 6 Tex. Jur., 838; 8 C. J., 205-6.

In Fowler v. Hays, 1 S. W. (2d) 1097 (writ of error refused), this precise question was before the court, and it was there held "nor is there any dispute as to the well settled rules of law that signers of a note are released if payee violates an agreement to secure the signature of another and that such agreement may be established by parol evidence."

The rule is well settled that one who executes an obligation conditioned, with the knowledge and consent of the obligee, that a third party shall likewise execute the instrument and share the liability thereon will be released from liability if the third party fails to so execute the instrument. Beard v. Austin, Banking Commissioner, 297 S. W., 786; Kugle v. Traders State Bank, 252 S. W., 208.

As said in Beard v. Austin, Banking Com., supra, "appellee's remedy was to sue on the prior notes or the debt itself."

■ Where the parties to a promissory note, which is past due, mutually agree to an extension of the time of payment, a new contract based upon a new consideration deemed valuable in law, arises between the parties. The payee impliedly promises to surrender his present right to demand immediate payment and to forego suit during the extension period; the payor impliedly promises to pay the indebtedness on the new maturity date and subject to the terms and conditions of the renewal agreement. Each of these new promises constitute the consideration for the other and a binding contract as modified by

the new agreement results. McNeill v. Simpson (Com. App.), 39 S. W. (2d) 835; Benson v. Phipps, 87 Texas, 578. A barred debt is sufficient consideration for such renewal. Goldfrank v. Young, 64 Texas, 432; Interstate Building & Loan Assn. v. Goforth, 94 Texas, 264; Hoya v. Self, 245 S. W., 424.

■ Whether P. A. Jones was or was not insolvent when the extension contract was made, is immaterial, if the agreement was that his signature should be obtained and that requirement was part of the contract of extension. The parties so contracted and are so bound.

■ While in certain cases insolvency may be a sufficient excuse for not suing a joint maker of a note, insolvency is never a valid reason for failing to secure the insolvent's signature to a note when the other party's signature to such note is conditioned upon the insolvent's signature being obtained, and without which the other party would not have signed.

■ There is no question of primary or secondary liability on Note No. 5 in this case, because no one could be liable thereon except M. T. Jones, the only signatory thereto; neither is there any question to be considered with reference to the stipulations relating to renewals contained in Note No. 1—they were not continued in Note No. 5, were not plead by appellant in the trial court, and of course are not available to him on appeal.

We have therefore reached the conclusion that it is not necessary to answer Questions Nos. 1, 2 and 3, that Questions Nos. 4 and 5 should be answered in the affirmative, and so recommend.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. CURETON, Chief Justice.