FIRST NAT. BANK OF BOWIE v.
BELL et al.
No. 13222.

Court of Civil Appeals of Texas.
Fort Worth.
Oct. 4, 1935.

Rehearing Denied Nov. 15, 1935.

Second Rehearing Denied Dec. 13, 1935.

T. B. Coffield, of Bowie, for appellant.

Donald & Donald, of Bowie, for appellees.

MARTIN, Justice.

Appellant brought this suit against appellees J. H. Bell and G. B. Bell, seeking to recover upon a number of notes found among the assets of the City National Bank of Bowie, which assets had been taken over by appellant by a general assignment when the City National Bank of Bowie went out of business and appellant bank took over its assets. No indorsement was made by the City National Bank.

Defendant J. H. Bell set up various defenses to the several notes, unnecessary to mention here, as this appeal is predicated upon the judgment of the court as to only one of said notes, to wit, a note for $5,000 executed July 16, 1930, payable to the City National Bank, signed by "J. H. Bell" on its face and "G. B. Bell, surety" on its back, secured by an assignment of six vendor's lien notes of G. B. Bell to J. H. Bell, as collateral security.

Trial was had to a jury, and by their verdict all of the defenses submitted were sustained, upon evidence regarded by the court and admitted by the appellant to be sufficient to support their verdict. The judgment of the court discharges appellant J. H. Bell with his costs, but is for the bank as against G. B. Bell for the sum of $13,-084.50, with interest at 10 per cent. No statement of facts is filed in this case.

Six assignments of error are presented for our consideration. The first, fifth, and sixth complain of the action of the trial court in overruling certain special exceptions of the plaintiff to portions of the answer of the defendants. The majority are inclined to the opinion that these ex-

ceptions are well taken, but in view of another trial and probable amended pleadings, we do not pass on such assignments of error.

Assignments two, three, and four present the controlling question, and we consider them together. This group of assignments present the question of whether the court was justified, upon the verdict of the jury, in discharging both defendants from liability on this $5,000 note and canceling the six vendor's lien notes which were assigned by J. H. Bell as collateral security for the same.

J. H. Bell pleaded that the debt was one of G. B. Bell, and that Hutchinson, the president of the City National Bank of Bowie, agreed with him to get the signature of G. B. Bell upon the same as principal, while he, J. H. Bell, was to be only secondarily liable as surety. This answer was sworn to by J. H. Bell, and G. B. Bell, in his sworn answer, adopted the pleading of J. H. Bell.

It will thus be seen that no question was raised as to G. B. Bell owing the bank the $5,000, represented by said note, which he signed on the back thereof, "G. B. Bell, surety." It was signed on its face, "J. H. Bell," appearing at the foot of said note where the maker usually signs.

The jury found "upon sufficient evidence," states the trial court, that Hutchinson so promised J. H. Bell, and the court thereupon rendered judgment in effect that plaintiff take nothing in his suit upon said note. As the matter appears in the transcript, the writer is of the opinion that the trial court could do nothing else, the note being void as to both principal and surety because of the failure of the condition of delivery.

As was said by Justice Levy in the case of Beard v. Austin, State Banking Com'r (Tex.Civ.App.) 297 S.W. 786, 787: "As the present note was never delivered nor intended by the parties to be delivered unconditionally for the purpose of giving effect thereto, it was not valid or effectual between the immediate parties for any purpose, without compliance with the condition. The appellee's remedy was to sue on the prior note or the debt itself."

But upon the principle that "no man should be permitted to reap an advantage from his own wrong," the majority are of the opinion that these assignments should be sustained and the case reversed and

remanded, so that the parties upon proper pleadings might reach some judgment that would appear more just and equitable.

As to the six vendor's lien notes, assigned as collateral security for the payment of the $5,000 note by J. H. Bell, the jury found that the plaintiff below, at the time the City National Bank of Bowie assigned to it these securities, had no knowledge of any equitable defenses to the same, and we all agree that as the cause is to be reversed, at all events, the issues presented as to these collateral notes should be retried.

We are seriously handicapped in the consideration of this case by the total absence of a statement of facts. It is made quite certain by the pleadings that one or both of the Bells owed the debt to the plaintiff bank, if not in the form presented, then in some other form and manner. The writer is of the opinion that the judgment of the trial court should be affirmed without prejudice to the right of appellant to sue on the debt and the collateral security, while my brethren think it should be affirmed as to all other issues, but reversed and remanded as to the $5,000 note and the six vendor's lien notes pledged as collateral therefor. After all, it will be noted that we are not far apart, at least not far enough for the writer to prepare and file a dissenting opinion.

The judgment of the trial court is affirmed in part and reversed and remanded in part.

BROWN, Justice (concurring for the majority).

Concurring in the disposition made of this cause, the majority respectfully submit the following observations:

The $5,000 note sued upon is set out in the petition in paragraph six thereof and the allegations are made that J. H. Bell executed the note and G. B. Bell indorsed it. That J. H. Bell executed a collateral agreement, made a part of the note, whereby six vendor's lien notes, each for $1,000, signed by G. B. Bell, were put up as security for the payment of the $5,000 note.

The note specifically provides that the makers and indorsers waive presentment for payment, protest, and notice of protest and of nonpayment.

As a defense to appellant's suit on such note and collateral security, J. H. Bell

alleged: (1) There was no consideration for his executing same, in that such note was given in renewal and extension of an original note and debt theretofore executed and owing by G. B. Bell; (2) that he was merely a surety on the note, and this fact was understood and agreed; (3) that the original payee, City National Bank, through its then president, agreed with him that the note would not become a binding and subsisting obligation unless and until G. B. Bell signed same as principal; (4) that such was not done, and he prays to be released from all obligations thereunder. He further pleaded that the collateral security put up by him were not vendor's lien notes growing out of a bona fide transaction, but that the sale, out of which they grew, was a pretended, or conditional, sale.

G. B. Bell answered, adopting the allegations of J. H. Bell and asserting the truthfulness thereof.

Were we favored with a statement of facts, our conclusions might be farther-reaching than we feel warranted in going, in the absence of such record.

The trial court rendered judgment releasing G. B. Bell and J. H. Bell on the $5,000 note, canceling the collateral security notes and removing the vendor's lien which clouded J. H. Bell's title to the lands described.

Appellant has appealed only from that part of the judgment dealing with the said $5,000 note and its collateral, and the Bells' obligation thereunder.

The trial court predicates his judgment on certain jury findings: (1) That it was agreed between G. B. and J. H. Bell and the original payee, City National Bank, that the deed and vendor's lien notes should be of no force and effect unless the lands were sold to one Richardson; (2) that it was agreed between J. H. Bell and said payee bank that unless G. B. Bell signed the $5,000 note as the maker, it would not be a binding obligation; (3) that J. H. Bell did not know that the collateral agreement, signed by him and attached to the $5,000 note, pledged the first six of the vendor's lien notes as collateral security for such note; (4) that J. H. Bell did not indorse his name on the back of the vendor's lien notes given as collateral security; (5) that on October 6, 1930, when the directors of City National Bank executed an instrument to the appellant bank, under which the last-mentioned

bank claims as assignee of the notes sued upon, the appellant Bank did not have knowledge of any agreement between the Bells and City National Bank that the deed and vendor's lien notes should be of no force and effect unless the lands were sold to one Richardson.

No statement of facts being before us, we are in no position to say what was testified to by J. H. Bell and G. B. Bell, but if the $5,000 note was delivered by the directors of the defunct City National Bank to the appellant on or about October 6, 1930, the appellant took title to such note before maturity, for value, regardless of whether there was a written contract of assignment and sale or a mere delivery.

■ The only question pertinent to that transaction is, Did appellant know of the facts contended for by the Bells in the last issue above mentioned at the time the note and its collateral were delivered to it? The jury expressly found that it had no such knowledge. If it had none, the defense urged is without avail. The answer to the first issue above mentioned then becomes immaterial.

If the appellant did not know that there was such an agreement as that inquired about in the second issue mentioned above, before it acquired the note, such issue becomes immaterial.

■ Furthermore, J. H. Bell signed the note in the face, as a maker, and he is not concerned with whether or not G. B. Bell signed as a maker, or as a surety, under the facts here. His liability is just as securely fixed, and his recourse is a recovery over against G. B. Bell, who alleges that he is in fact the principal, as does J. H. Bell.

■ J. H. Bell executed the collateral agreement and he cannot be heard to impeach its plain unambiguous terms by merely saying he did not know that the vendor's lien notes described in the agreement were pledged to secure the payment of the $5,000 note.

■ The finding on the third issue above mentioned is a nullity, under the pleadings and the record before us. The finding on the fourth issue mentioned above is likewise a nullity. The written pledge agreement made by J. H. Bell put these vendor's lien notes up as security for the $5,000 note and the mere fact that J. H. Bell did not indorse his name on the back of the collateral notes means nothing.

■ It cannot be successfully said that there is, from the record, no consideration moving to J. H. Bell for his making or indorsing the $5,000 note, if it is in renewal of a prior note and debt owed by G. B. Bell, all of which J. H. Bell alleges to be true.

If G. B. Bell's prior debt was past due and he wanted it extended and the owner granted the renewal and extension in part because of J. H. Bell's signature as a maker, or indorser, sufficient consideration passed to J. H. Bell, under such circumstances. Kennedy v. McCauley (Tex.Civ. App.) 248 S.W. 423, and cases cited.

The majority concur in the opinion reversing the judgment of the trial court, in which J. H. Bell and G. B. Bell are released from all liability on such note, and canceling the collateral notes and vendor's lien executed to secure them, and in remanding this cause for a trial on such issues. If the testimony raises no further issues than those presented, and the jury finds as was done in the former trial, the appellant will be entitled to a judgment against both Bells on the note and for title to the collateral security put up by J. H. Bell.

At all events, appellant was entitled to a judgment against G. B. Bell regardless of the manner in which he signed the note. He pleads that it is his obligation and he has signed it, and no qualification attached by him to his signature attempting to make of himself a mere surety can serve to release him from his liability. He cannot take advantage of his own wrongdoing.

On Motion for Rehearing.

BROWN, Justice.

Appellees insist that appellant bank is not a holder in due course of the notes sued upon because of the provisions of the Negotiable Instruments Act, article 5934, R.C.S., which provides that the "instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. * * * if payable to order it is negotiated by the indorsement of the holder completed by delivery." Section 30.

"The indorsement must be written on the instrument itself or upon a paper attached thereto." Article 5934, § 31.

Appellee says the provisions of the statute were not complied with, and contends,

further, that the trial court found that the note in controversy was not indorsed by the payee, and that there was no indorsement on any paper attached to the note, and found that, therefore, the appellant is not a holder in due course for value.

There is no statement of facts before us. The case was tried to a jury, and the jury did not return a verdict finding any such facts as are contended for. The trial court made no such finding in the judgment before us, and, of course, was not called upon to make any findings of fact, or conclusions of law, this being a case tried to a jury.

Looking into the transcript, where we are directed by appellees (pp. 69 to 71), we find what is called a "bill of exceptions," and it recites that "there was also offered and admitted into evidence (a) contract between the City National Bank of Bowie, Texas (original payee) and the First National Bank of Bowie, Texas, dated October 6, 1930, whereby all the assets of the said City National Bank were transferred to plaintiff herein, said First National Bank; the note set out above was not endorsed by the City National Bank of Bowie, Texas, nor was there any endorsement on any paper attached to said note, and therefore the Court holds that the plaintiff is not a holder in due course for value. Etc."

The foregoing is treated by all parties as a bill of exceptions, and is signed by all parties and approved by the trial court. This is the part of the record from which appellees take their said findings by the trial court. Nowhere else are there any such findings by the trial court.

We do not believe that the so-called bill of exceptions is a statement of facts.

■ If it is a bill of exceptions, it cannot take the place of a statement of facts. This is fundamental.

■ If it is a statement of facts, then it shows upon its face that on October 6, 1930, the original payee made a written contract with the appellant whereby it transferred all of its assets (which would, of necessity, include the note in question) to appellant, and such an instrument in writing would be, as a matter of law, a substantial compliance with the terms of the Negotiable Instruments Act requiring that the payee's "indorsement must be written on the instrument itself or upon

a paper attached thereto." Such would be in contemplation of the statute, "a paper attached thereto," and the finding of the trial court that there was no indorsement on any paper attached to the note is made in the face of undisputed facts, and would not be permitted to stand.

The court submitted without objection upon the part of any party to the suit Issue No. 11, as follows: "Special Issue No. 11. On October 6, 1930, when the directors of the City National Bank executed the instrument to the First National Bank under which plaintiff now claims as assignee of the notes, did the plaintiff, First National Bank, have knowledge that it had been agreed between G. B. Bell, J. H. Bell and the City National Bank that the deed and the ten vendor's lien notes, dated August 16, 1924, should be of no force and effect unless such land should be sold to one Richardson (if such an agreement was made between G. B. Bell, J. H. Bell and the City National Bank)? Answer yes or no. Answer: No."

This issue assumes, without objection of any party, that on October 6, 1930, the proper officers of the original payee executed an instrument in writing assigning the note in question to the First National Bank, and requires the jury to find whether or not the assignee of the note had knowledge of an oral agreement had between the Bells and the original payee to the effect that the note would not have any force or effect unless certain lands were thereafter sold to one Richardson. The jury answered that the assignee had no such knowledge.

This issue admits that a written assignment of the note was made by the original payee to the appellant.

The note necessarily accompanied the written assignment, and this would be a compliance with the provisions of the Negotiable Instruments Act.

The motion for a rehearing is overruled.

### On Second Motion for Rehearing.

Appellees strenuously contend that appellant bank is not a holder in due course of the note in controversy, and that therefore the note is subject to any defense that could be raised while in the hands of the original payee. If we admit, for the sake of argument, that this proposition is true, we are, nevertheless, still confronted with the question: Has a defense to the note been established? We do not think so. J. H. Bell undertakes to be released from the note on the theory that the payee bank obligated itself to procure G. B. Bell's signature to the note as a maker, but that this was not done, and he is, by reason of such breach of contract, released from all liability as a surety; he having pleaded that it was understood that he would only sign as a surety. But the pleadings and undisputed record show that J. H. Bell is entitled to no such defense. J. H. Bell pleads, under oath, that the obligation is solely that of G. B. Bell; that he was requested to sign the note as a surety; that he delivered the note to the payee bank with the understanding and agreement that G. B. Bell would sign as a maker; that the note was in renewal of a former note owing by G. B. Bell. G. B. Bell expressly adopted, under oath, the pleadings of J. H. Bell and alleged, under oath, that the allegations in J. H. Bell's petition "are true and correct in substance and in fact."

It is undisputed that J. H. Bell signed the note and that G. B. Bell signed it but qualified his indorsement as that of a surety. J. H. Bell swears that the obligation is G. B. Bell's, and G. B. Bell swears that these allegations are true and correct. When G. B. Bell pleads, under oath, that he is the principal obligor, and in effect alleges that he should have signed the note as maker and should not have attempted to qualify his indorsement, wherein has J. H. Bell been injured?

J. H. Bell's sworn complaint is that he is only a surety and G. B. Bell should have been the maker. But G. B. Bell admits that he is the maker and the principal primarily obligated. This is not a case where a person who should have signed did not do so, and could not be held. This is a case where a person whose signature was to be obtained actually signed the note, but in so doing attempted to qualify his indorsement. But when suit is brought on the note he promptly answers, under oath, and acknowledges that he either erroneously or fraudulently qualified his indorsement. In good conscience, G. B. Bell cannot thus take advantage of his own wrong, which he admits under oath. Having admitted his liability under oath, J. H. Bell can make no complaint because G. B. Bell thus acknowledges that the debt is his.

Appellees cite Beard v. Austin (Tex.Civ. App.) 297 S.W. 786; Williams v. Jones, 122 Tex. 61, 52 S.W.(2d) 256; and Fowler v. Hays (Tex.Civ.App.) 1 S.W.(2d) 1097.

But these cases are easily distinguished from the case before us, because in each of these cases the promised signature was never. procured and the persons whose signatures were to be procured were not in court pleading, under oath, that they did sign the notes, but that they qualified their indorsements when they should not have done so.

This cause presents a situation unlike any case that has been furnished us by either appealing party and unlike any that we have found by private investigation. The question before us is: Under the sworn pleadings of the parties, who executed the note in question, and, under the admitted facts, can G. B. Bell take advantage of his own wrong? If he cannot, then can J. H. Bell, who cannot show that he has been injured by reason of G. B. Bell's admissions, complain that he, as an indorser, should be released? We do not believe that either Bell can deny liability under such circumstances.

The second motion for rehearing is overruled.