**R. Z. ABELL, Sr., Appellant,**

**v.**

**W. Leroy WAGGONER, Appellee.**

**No. 7468.**

Court of Civil Appeals of Texas.

Amarillo.

May 17, 1965.

Gordon Treadaway, Lubbock, for appellant.

Anderson & Edwards, Lubbock, for appellee.

NORTHCUTT, Justice.

On March 19, 1963, R. Z. Abell, Sr., and Gene Barton entered into a lease contract under which Abell leased to Barton certain property located in Lubbock, Texas, to be used as a convalescent home. The contract provided that the lease was to begin ten days after approval of the premises as a nursing home by the City of Lubbock and the State of Texas and to end August 31, 1967, for an agreed rental of $800 per month to be paid by Barton to Abell. Barton was unable financially to carry on the business by himself and had made an agreement with W. Leroy Waggoner to furnish certain finances. Waggoner and Barton agreed to form a corporation to run the business. Waggoner placed $5,000 in the Plains National Bank of Lubbock in the name of "Poplar Grove Convalescent Home." The lease contract provided for the payment by Barton of $1,600 for the payment of the first and last month's rent. Barton requested Waggoner to issue a check payable to Abell but Waggoner refused until Barton brought the lease for Waggoner to read. After Waggoner checked the contract, he and Barton executed the check for $1,600 payable to R. Z. Abell, Sr., and the check was signed, "Poplar Grove Convalescent Home," by Barton and Waggoner. The check was delivered to Abell's attorney that drew the lease contract and was never presented to the bank for payment until the account was closed and Abell never request-

ed the attorney to cash the same until after the account had been closed.

The lease contract provided as follows: "If Abell is unable to secure the approval of the premises as a nursing home within sixty (60) days from the date of this agreement, this contract shall have no further force and effect and the sixteen-hundred dollars ($1,600.00) shall be returned by Abell to Barton." Abell failed to secure the approval of the premises as a nursing home within the sixty days from the date of the lease agreement. The check had not been cashed and Waggoner after the sixty days had passed stopped payment on the check and withdrew the money that was deposited in the name of "Poplar Grove Convalescent Home" and closed the account.

Sometime after the sixty days had passed, Barton secured a permit to operate the nursing home for a capacity of only thirty-one beds and went and discussed the matter with Waggoner. Waggoner at that time informed Barton that he was not interested in proceeding and was out of the matter completely. Shortly thereafter Barton turned the premises back to Abell.

Abell brought this action against both Waggoner and Barton to recover upon the $1,600 check. Barton wholly made default and judgment was granted in favor of Abell against Barton for the sum of $1,600 with interest thereon from date at the rate of six per cent per annum and for all costs of suit. Barton did not appeal from that judgment.

The case proceeded to trial as to the liability of Waggoner upon the check in question. The case was tried to a jury upon special issues. The jury found that Waggoner agreed to finance Barton in the operation of the convalescent home; that Abell performed all of his obligations under the contract with Barton except that he failed to get the premises approved as a convalescent home within sixty days from the date of the contract; that Waggoner did not waive the sixty-days time limit for performance of the contract and that the agreement between Waggoner and Barton contemplated more than thirty-one bed permit allowed by the State of Texas. Judgment was entered upon the verdict of the jury that Abell take nothing by his suit as against Waggoner. From that judgment Abell perfected this appeal. Hereafter Abell will be referred to as appellant and Waggoner as appellee.

Appellant presents this appeal upon four points of error. The first point states the court erred in failing to render judgment for plaintiff against defendant (Waggoner) for amount of check. The remaining three points contend the court erred in submitting and/or rendering judgment on Special Issues Two and Three for the reason that such issues were not material issues in the case. Special Issue No. Two reads as follows:

"Do you find from a preponderance of the evidence that the Defendant Waggoner by his actions, if any, did not waive the sixty-day time limit for the performance of the contract between Plaintiff Abell and Defendant Barton?"

Special Issue No. Three reads as follows:

"Do you find from a preponderance of the evidence that the agreement between Defendant Waggoner and Defendant Barton contemplated more than a thirty-one bed permit allowed by the State of Texas?"

Appellant testified that he owned the building in question and had occupied it as a hospital for a number of years until he retired in 1957 and that he had forty-two beds. The evidence is undisputed that when the lease contract was entered into it was contemplated that the license when granted would be for more than thirty-one beds. Appellant testified: "I didn't discuss it with anyone, as far as I remember, but if you had moved out of there and had fifty beds, why, I would have thought I could have had

fifty when I went in there, you see." The lease contract was between appellant and Barton. Waggoner was not a party to the lease. Waggoner refused to advance the $1,600 check until he read the lease agreement. The check was advanced upon the terms of the lease. Appellant and appellee never at any time had any agreement. The considerations, if any, for the issuance of the check by appellee were that appellant was to secure the approval of the premises as a nursing home within sixty days from the date of the lease agreement; and if appellant failed to do so, the lease contract was to be of no further force and effect. If the lease contract was of no further force and effect, there was no consideration for the $1,600 check. Appellant failed to comply with that condition. Consequently, the lease contract was of no further force and effect so far as appellee was concerned.

Failure of consideration is a matter of defense as against a person not a holder in due course. Section 28, Article 5933, Vernon's Ann.Tex.Civ.St. Appellant was not a holder in due course. Delivery upon a condition or for special purpose only may always be shown as between the immediate parties. Kuper v. Schmidt, 161 Tex. 189, 338 S.W.2d 948. In the case at bar before the obligation to pay the $1,600 was to arise, the appellant was to secure the approval of the premises as a nursing home within the sixty days, and appellee's obligation did not arise since the condition was never performed. Williams v. Jones, 122 Tex. 61, 52 S.W.2d 256. There is nothing in this record to show appellee was to finance Barton only under the terms of the lease contract as originally contemplated. After the sixty days had passed, there is nothing to show appellee would agree to do anything. After the sixty days had passed, appellant stopped payment on the check and closed the bank account and refused to have anything further to do with the deal. Appellee's agreement was with Barton under the terms of the lease agreement as was in the contemplation of the parties that appel-

lant was to secure the approval of the premises as a nursing home within the sixty days with a bed capacity of forty-two or more beds. After carefully considering all of appellant's points of error, they are overruled.

Judgment of the trial court is affirmed.